UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEANNA CURTIS and MIRANDA JANE BENNETT-MORALES, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A.; and EARLY WARNING SERVICES, LLC d/b/a ZELLEPAY.COM,<br><br>Defendants. | Case No. 22-cv-10286-LGS |

## DECLARATION OF KEVIN KESTERSON

I, Kevin Kesterson, of lawful age, being duly sworn, declare as follows:

1. I am a Vice President, Business Analysis Manager at JPMorgan Chase Bank, N.A. ("Chase").

2. In my position as Vice President, Business Analysis Manager, I am familiar with Chase's agreements with its accountholders with respect to Chase's online offerings and digital services, the process by which customers enroll to partake in such services, and the data maintained by Chase in the ordinary course of business with respect to both the enrollment process and online activities in relation to deposit accounts. I also have access to Chase's business records relating to Chase customers, including Plaintiffs Keanna Curtis and Miranda Jane Bennett-Morales. All facts set forth in this Declaration are based upon my personal knowledge, my review of Chase business records maintained by Chase in the ordinary course of business and other Chase documentation obtained from Chase's internal systems, and my knowledge as a Vice President, Business Analysis

1

Manager with Chase. If called to testify in this matter, I could competently testify to the facts set forth herein.

### **Plaintiff Keanna Curtis**

3.  I have reviewed business records regarding the enrollment of Plaintiff Keanna Curtis in online banking services at Chase relating to her College Checking account ending 1886 (the "Curtis Account") and her acceptance of certain agreements with Chase relating to that same Curtis Account. Such records have been obtained by searching Ms. Curtis' name in Chase's Customer Assist database, which allows for the information specific to Ms. Curtis and the Curtis Account within Chase's possession to be located and then used to look up Ms. Curtis in Chase's Admin Tool database, which tracks which agreements a customer has agreed to and when and is updated in real-time.

### *The DSA*

4.  Chase's records reflect that Ms. Curtis agreed to Chase's Digital Service Agreement ("DSA") on November 18, 2019. During that enrollment process, Ms. Curtis was required to and would have had to affirmatively click boxes acknowledging that she had read and accepted the DSA. Prior to providing such acknowledgement, Ms. Curtis would have been provided electronic access to the DSA for review by hyperlink. If Ms. Curtis had not provided the above-referenced acknowledgement with respect to her review and acceptance of the terms of the DSA, she would not have been permitted to proceed or to partake in such digital products and services, nor would the DSA appear in the Admin Tool database as an agreement she accepted.

5.  Chase has updated the DSA from time to time through April 1, 2021. When it did so, Chase would have made these updates available to customers such as Ms. Curtis, as set forth in the DSA, including by posting them to the Chase website.

6.      All versions of the DSA are maintained in Chase's Adobe Experience Manager content management system. The versions of the DSA referenced in the portion of this Declaration pertaining to Ms. Curtis were obtained from this system.

7.      A true and correct excerpted copy of the DSA dated August 25, 2019 and last modified on November 17, 2019 is attached hereto as **Exhibit A**. This version of the DSA was in effect on November 18, 2019, when Ms. Curtis agreed to be bound by the terms of the DSA. Section IX of this version of the DSA contains both a mandatory arbitration provision and a class action waiver provision.

8.      A true and correct excerpted copy of the DSA last updated April 1, 2021 is attached hereto as **Exhibit B**. This version of the DSA was in effect when the purported events Ms. Curtis described in paragraph 95 through 107 of the Amended Complaint took place (April 20, 2022 through April 28, 2022). This version of the DSA was also in effect when Ms. Curtis first filed her lawsuit and the original Complaint on December 5, 2022. Section VIII of this DSA contains both a mandatory arbitration provision and a class action waiver provision.

9.      Chase's records reflect that Ms. Curtis agreed to Chase's "new" Consolidated Digital Services Agreement (the "New DSA") on December 30, 2022 after she filed her lawsuit on December 5, 2022. During that enrollment process, Ms. Curtis was required to and would have had to affirmatively click boxes acknowledging that she had read and accepted the New DSA; this can be confirmed as the New DSA is listed in Admin Tool as an agreement she agreed to.

10.     A true and correct excerpted copy of the New DSA last updated December 15, 2022 is attached hereto as **Exhibit C**. This version of the DSA was in effect when Ms. Curtis filed her Amended Complaint on March 2, 2023. Section 14 of the New DSA, under the General Terms and Conditions, contains both an arbitration provision and a class action waiver provision.

11. Attached hereto as **Exhibit D** is a true and correct copy of a document visually depicting the flow and sequence of Chase's process for enrolling a new customer in online services, as of Q4 2022 and as maintained in Chase's internal system for a hypothetical customer enrolling in online services for the first time.  Screenshot 8 in Exhibit D, on page 4, reflects what an accountholder would see with respect to reading and agreeing to the terms of Chase's Digital Services Agreement, including having access to the full agreement in effect at that time for review by hyperlink.   Screenshot 9 in Exhibit D, on page 5, reflects how the accountholder would have to check the box saying "I agree to the Digital Services Agreement" in order to complete their enrollment and activate their online service.  Users enrolling back in 2019 would have had a substantially similar view when accepting the terms of the DSA in effect at the time, including by needing to affirmatively click to acknowledge reading and acceptance of that DSA.

### *The Zelle Agreement*

12. Chase's records reflect that Ms. Curtis agreed to the Chase QuickPay and J.P. Morgan QuickPay Agreement incorporating the Zelle® Service Agreement and Privacy Notice (the "Zelle Agreement") on October 16, 2019.  During that enrollment process, Ms. Curtis was required to and would have had to affirmatively click boxes acknowledging that she had read and accepted the Zelle Agreement.  Prior to providing such acknowledgement, Ms. Curtis would have been provided electronic access to the Zelle Agreement for review by hyperlink.  If Ms. Curtis had not provided the above-referenced acknowledgement with respect to her review and acceptance of the terms of the Zelle Agreement, the Zelle Agreement would not appear in the Admin Tool database as an agreement she accepted.

13. Consolidated **Exhibit E** hereto, obtained from Chase's internal systems, visually depicts portions of the Chase Zelle enrollment and activation process in 2019 and in 2023.

14. Exhibit E(1) contains the visual depiction if the user had elected to use a phone token to enroll on their mobile device, whereas Exhibit E(2) contains the visual depiction if the user had elected to use an email token to enroll on their mobile device, in 2019. A visual depiction of the hyperlink to the Zelle Agreement a user would have seen at that time for that user's review and consideration prior to acknowledging their review and acceptance of the Zelle Agreement's terms is reflected on pages 1-2 of each of Exhibits E(1) and E(2). Users enrolling at a computer, as opposed to on a mobile device, would have also seen a similar looking hyperlink to the Zelle Agreement and a box to check in order to acknowledge review and acceptance of the Zelle Agreement's terms. A description of Exhibit E(3) and Exhibit E(4) follows later in this Declaration.

15. Chase has updated the Zelle Agreement from time to time through November 3, 2022. When it did so, Chase would have made these updates available to customers such as Ms. Curtis, as set forth in the Zelle Agreement, including by posting them to the Chase website.

16. All versions of the Zelle Agreement are maintained in Chase's Adobe Experience Manager content management system. The versions of the Zelle Agreement referenced in the portion of this Declaration pertaining to Ms. Curtis were obtained from this system.

17. A true and correct excerpted copy of the Zelle Agreement dated August 25, 2019 is attached hereto as **Exhibit F**. This version of the Zelle Agreement was in effect on October 16, 2019 when Ms. Curtis agreed to be bound by the terms of the Zelle Agreement. Section 22 of this version of the Zelle Agreement contains both a mandatory arbitration provision and a class action waiver provision.

18. A true and correct excerpted copy of the Zelle Agreement dated May 23, 2021 is attached hereto as **Exhibit G**. This version of the Zelle Agreement was in effect when the events

Ms. Curtis described in paragraph 95 through 107 of the Amended Complaint took place (April 20, 2022 through April 28, 2022). Section 23 of this Zelle Agreement contains both a mandatory arbitration provision and a class action waiver provision.

19. A true and correct excerpted copy of the Zelle Agreement last updated November 3, 2022 is attached hereto as **Exhibit H**. This version of the Zelle Agreement was in effect when Ms. Curtis first filed her lawsuit and the original Complaint on December 5, 2022. Section 23 of this Zelle Agreement contains both a mandatory arbitration provision and a class action waiver provision.

### Plaintiff Miranda Jane Bennett-Morales

20. I have reviewed business records regarding the enrollment of Plaintiff Miranda Jane Bennett-Morales in online banking services at Chase relating to her Total Checking account ending 0258 and Savings account ending 8139 (the "Bennett-Morales Accounts") and her acceptance of certain agreements with Chase relating to those same Bennett-Morales Accounts. Such records have been obtained by searching Ms. Bennett-Morales' name in Chase's Customer Assist database, which allows for the information specific to Ms. Bennett-Morales and the Bennett-Morales Accounts within Chase's possession to be located and then employed to look up Ms. Bennett-Morales in Chase's Admin Tool database, which tracks which agreements a customer has agreed to and when and is updated in real-time, as noted above.

#### *The DSA*

21. Chase's records reflect that Ms. Bennett-Morales agreed to Chase's DSA on May 21, 2019. During that enrollment process, Ms. Bennett-Morales was required to and would have had to affirmatively click boxes acknowledging that she had read and accepted the DSA. Prior to providing such acknowledgement, Ms. Bennett-Morales would have been provided electronic

access to the DSA for review by hyperlink.  If Ms. Bennett-Morales had not provided the above-referenced acknowledgement with respect to her review and acceptance of the terms of the DSA, she would not have been permitted to proceed or to partake in such digital products and services, nor would the DSA appear in the Admin Tool database as an agreement she accepted.  Paragraph 11 concerning what users enrolling back in 2019 would have viewed when accepting the terms of the DSA, including by needing to affirmatively click to acknowledge reading and acceptance of the DSA, is incorporated here by reference.

      22.    As noted above, Chase has updated the DSA from time to time through April 1, 2021 and would have made these updates available to customers like Ms. Bennett-Morales.

      23.    Also as noted above, all versions of the DSA are maintained in Chase's Adobe Experience Manager content management system.  The versions of the DSA referenced in the portion of this Declaration pertaining to Ms. Bennett-Morales were obtained from this system.

      24.    A true and correct excerpted copy of the DSA dated March 17, 2019 is attached hereto as **Exhibit I**.  This version of the DSA was in effect on May 21, 2019 when Ms. Bennett-Morales agreed to be bound by the terms of the DSA.  Section IX of this version of the DSA contains both a mandatory arbitration provision and a class action waiver provision.

      25.    As noted above, the DSA was last updated April 1, 2021 and is attached hereto as **Exhibit B**.  This version of the DSA was in effect as to Ms. Bennett-Morales when the events she described in paragraph 116 through 136 of the Amended Complaint took place (January 31, 2023 through February 12, 2023). Ms. Bennett-Morales has not yet accepted the New DSA.  Therefore, this version of the DSA was also in effect as to Ms. Bennett-Morales when she joined this lawsuit and in the Amended Complaint on March 2, 2023.  Section VIII of this DSA contains both a mandatory arbitration provision and a class action waiver provision.

*The Zelle Agreement*

26.     Chase's records reflect that Ms. Bennett-Morales agreed to the Zelle Agreement on February 15, 2023.  During that enrollment process, Ms. Bennett-Morales was required to and would have had to affirmatively click boxes acknowledging that she had read and accepted the Zelle Agreement.  Prior to providing such acknowledgement, Ms. Bennett-Morales would have been provided electronic access to the Zelle Agreement for review by hyperlink.  If Ms. Bennett-Morales had not provided the above-referenced acknowledgement with respect to her review and acceptance of the terms of the Zelle Agreement, the Zelle Agreement would not appear in the Admin Tool database as an agreement she accepted.

27.     As noted above, **Exhibit E** hereto, obtained from Chase's business records, visually depicts portions of the Chase Zelle enrollment and activation process as completed in 2019 and 2023.

28.     Exhibit E(3) contains the visual depiction if the user had elected to enroll on their mobile device, whereas Exhibit E(4) contains the visual depiction if the user had elected to enroll at a computer, in 2023. A visual depiction of the hyperlink to the Zelle Agreement a user would have seen at that time for that user's review and consideration prior to acknowledging their review and acceptance of the Zelle Agreement's terms is reflected on pages 1-2 of Exhibit E(3) and on pages 2-3 in Exhibit E(4).

29.     As noted above, all versions of the Zelle Agreement are maintained in Chase's Adobe Experience Manager content management system.  The version of the Zelle Agreement referenced in the portion of this Declaration pertaining to Ms. Bennett-Morales was obtained from this system.

30. Also as noted above, the Zelle Agreement was last updated November 3, 2022 and is attached hereto as **Exhibit H**. This version of the Zelle Agreement was in effect when Ms. Bennett-Morales first joined this lawsuit and the Amended Complaint on March 2, 2023. Section 23 of this Zelle Agreement contains both a mandatory arbitration provision and a class action waiver provision.

### Concluding Remarks Concerning Exhibits Hereto

31. Each of the exhibits referenced herein is a business record made in the ordinary course of business at Chase and/or comes directly from Chase's internal systems.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on March 17, 2023

*Kevin Kesterson*

Kevin Kesterson
Vice President, Business Analysis Manager
JPMorgan Chase Bank, N.A.