**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

KEANNA CURTIS and MIRANDA JANE
BENNETT-MORALES, Individually and
On Behalf of All Others Similarly Situated,

                         Plaintiffs,

               v.

JPMORGAN CHASE BANK, N.A., and
EARLY WARNING SERVICES, LLC
D/B/A ZELLEPAY.COM

                    Defendants.

No. 1:22-cv-10286-LGS

**ORAL ARGUMENT REQUESTED**

**MEMORANDUM OF LAW IN SUPPORT OF JPMORGAN CHASE BANK N.A.'S AND EARLY WARNING SERVICES, LLC'S JOINT MOTION TO COMPEL INDIVIDUAL ARBITRATION AND STAY THIS ACTION**

**<u>TABLE OF CONTENTS</u>**

<u>Page</u>

PRELIMINARY STATEMENT ...................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................... 2

     A.    Plaintiffs Both Agreed To The DAA When Opening Their Accounts .................. 2

     B.    The DAA Contains A Binding Arbitration Provision............................................. 3

     C.    Plaintiffs Both Agreed To The DSA And Ms. Curtis Agreed To The New DSA .. 5

     D.    The DSA And The New DSA Contain Binding Arbitration Provisions ............... 6

     E.    Plaintiffs Both Agreed To The Zelle Agreement................................................... 7

     F.    The Zelle Agreement Contains A Binding Arbitration Provision ......................... 8

     G.    Plaintiffs' Claims And Reliance On Agreements With Chase .............................. 9

ARGUMENT .............................................................................................................. 10

I.     THIS COURT SHOULD COMPEL ARBITRATION OF PLAINTIFFS' CLAIMS
     PURSUANT TO THE AGREEMENTS ....................................................... 10

     A.    The Plaintiffs Entered Into Valid Agreements To Arbitrate................................ 11

          1.    Both Plaintiffs Assented To The DAA ..................................................... 11

          2.    Both Plaintiffs Assented To The DSA And Zelle Agreement .................. 14

     B.    Plaintiffs' Claims Are Covered By The Arbitration Provisions .......................... 14

     C.    EWS Is Entitled To Enforce The Agreement To Arbitrate................................... 16

     D.    Plaintiffs Should Be Estopped From Repudiating The Arbitration Provisions .... 18

II.    THIS ACTION SHOULD BE STAYED PENDING ARBITRATION.......................... 18

CONCLUSION............................................................................................................ 18

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Alghanim v. Alghanim*,
828 F. Supp. 2d 636 (S.D.N.Y. 2011)......................................................................15

*Anonymous v. JP Morgan Chase & Co.*,
2005 WL 2861589 (S.D.N.Y. Oct. 31, 2005).....................................................13, 14

*Astra Oil Co. v. Rover Navigation, Ltd.*,
344 F.3d 276 (2d Cir. 2003)..........................................................................17, 18

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)....................................................................................10

*AT&T Techs, Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986)....................................................................................14

*Bakon v. Rushmore Services Center, LLC*,
2017 WL 2414639 (E.D.N.Y. June 2, 2017) ...........................................................17

*Cfirstclass Corp. v. Silverjet PLC*,
560 F. Supp. 2d 324 (S.D.N.Y. 2008) ..................................................................8

*Cho v. JS Autoworld 1 Ltd.*,
97 F. Supp. 3d 351 (E.D.N.Y. 2015) ..................................................................17

*Dill v. JPMorgan Chase Bank, N.A.*,
2020 WL 4345755 (S.D.N.Y. Jul. 29, 2020) .............................................12, 15, 18

*Doe #1 v. Coll. Bd.*,
440 F. Supp. 3d 349 (S.D.N.Y. 2020).....................................................10, 15, 18

*Epic Sys. Corp. v. Lewis*,
138 S. Ct. 1612 (2018)..................................................................................10

*Flores v. Chime Fin., Inc.*,
2022 WL 873252 (S.D.N.Y. Mar. 23, 2022) ...........................................................13

*Fluor Daniel Inter., Inc. v. Gen. Elec. Co.*,
1999 WL 637236 (S.D.N.Y. Aug. 20, 1999)............................................................18

*Greater Bright Light Home Care Servs., Inc. v. Jeffries-El*,
58 N.Y.S.3d 68 (N.Y. App. Div. 2017) ..................................................................16

*Hidalgo v. Amateur Athletic Union of the U.S., Inc.*,
468 F. Supp. 3d 646 (S.D.N.Y. 2020)...................................................................13

*Johnson v. JPMorgan Chase Bank, N.A.*,
   2018 WL 4726042 (C.D. Cal. Sept. 18, 2018) ...............................................................12, 18

*Katz v. Cellco P'ship*,
   794 F.3d 341 (2d Cir. 2015) ........................................................................................18

*KPA Promotion & Awards, Inc. v. JPMorgan Chase & Co.*,
   2021 WL 1317163 (S.D.N.Y. Apr. 8, 2021) ...............................................................12, 16

*Meyer v. Uber Techs., Inc.*,
   868 F.3d 66 (2d Cir. 2017) .......................................................................10, 11, 13, 14

*MK West Street Co. v. Meridien Hotels, Inc.*,
   184 A.D.2d 312 (N.Y. App. Div. 1992) ..........................................................................16

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ........................................................................................................15

*National Union Fire Ins. Co. v. Champps Entm't, Inc.*,
   2004 WL 2884304 (S.D.N.Y. Dec. 13, 2004) ...................................................................15

*Novak v. JP Morgan Chase Bank, N.A.*,
   2008 WL 907380 (E.D. Mich. Mar. 31, 2008) ..................................................................12

*Pelligrino v. Morgan Stanley Smith Barney LLC*,
   2018 WL 2452768 (S.D.N.Y. May 31, 2018) ..................................................................14

*Peter v. Doordash, Inc.*,
   445 F. Supp. 3d 580 (N.D. Cal. 2020) ............................................................................11

*Plazza v. Airbnb, Inc.*,
   289 F. Supp. 3d 537 (S.D.N.Y. 2018) ............................................................................13

*Rollins v. Goldman Sachs & Co. LLC*,
   2019 WL 2754635 (S.D.N.Y. July 2, 2019) ....................................................................11

*Salzano v. Lace Ent. Inc.*,
   2014 WL 3583195 (S.D.N.Y. July 18, 2014) ..................................................................15

*Sanchez v. J.P. Morgan Chase Bank, N.A.*,
   2014 WL 4063046 (S.D. Fla. Aug. 15, 2014) ..................................................................12

*Scott v. JPMorgan Chase & Co.*,
   2014 WL 338753 (S.D.N.Y. Jan. 30, 2014),
   *aff'd*, 603 F. App'x 33 (2d Cir. 2015) ..........................................................................12

*Scott v. JPMorgan Chase & Co.*,
   603 F. App'x 33 (2d Cir. 2015) ....................................................................................10

*Sha-Poppin Gourmet Popcorn LLC v. JPMorgan Chase Bank, N.A.*,
    553 F. Supp. 3d 452 (N.D. Ill. 2021) ...................................................................12

*Smith/Enron Cogeneration Ltd. v. Smith Cogeneration Int'l, Inc.*,
    198 F.3d 88 (2d. Cir. 1999)................................................................................17

*Sunmonu v. Chase Bank, N.A.*,
    2019 WL 1258788 (D. Md. Mar. 19, 2019)....................................................12, 16

*Tepper Realty Co. v. Mosaic Tile Co.*,
    259 F. Supp. 688 (S.D.N.Y. 1966) ...................................................................2, 18

*Thorne v. Square, Inc.*,
    2022 WL 542383 (E.D.N.Y. Feb. 23, 2022)........................................................14

*United States v. Bank of Am.*,
    2009 WL 2009022 (W.D.N.Y. Feb. 20, 2009) ....................................................12

*Vandewater & Lapp v. Sacks Builders, Inc.*,
    186 N.Y.S.2d 103 (N.Y. App. Term 1959) ..........................................................17

*Whitt v. Prosper Funding LLC*,
    2015 WL 4254062 (S.D.N.Y. July 14, 2015) .......................................................14

**STATUTES**

9 U.S.C. § 2....................................................................................................................10

9 U.S.C. § 3..............................................................................................................10, 18

Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.* .................................................. *passim*

**RULES**

Fed. R. Civ. P. 12............................................................................................................1

Pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.* ("FAA"), JPMorgan Chase Bank, N.A. ("Chase") and Early Warning Services, LLC ("EWS") (together, "Defendants") jointly move for an order (1) compelling Plaintiffs Keanna Curtis and Miranda Jane Bennett-Morales to separately arbitrate their claims on an individual basis pursuant to binding contractual arbitration provisions and (2) staying these proceedings until each arbitration is complete (the "Motion").[1]

## PRELIMINARY STATEMENT[2]

Plaintiffs, both Chase accountholders, allege that unauthorized transactions were made from their Chase bank accounts ("Accounts") using Zelle®[3] and that they were not refunded for these transfers after reporting the purported fraud.  They bring five causes of action, including a breach of contract claim against Chase premised on accountholder agreements such as the Deposit Account Agreement ("DAA") and Zelle® Service Agreement and Privacy Notice ("Zelle Agreement").  Plaintiffs' claims are without merit, but that point aside, their claims do not belong in this Court because they both agreed, multiple times, to arbitrate their claims on an individual basis.  In fact, their agreement to arbitrate is contained in the same contracts they cite in the claims.

In order to open their Accounts, both Plaintiffs had to agree to the terms of the DAA and each manifested their assent to this agreement by personally completing Chase's "Click to Sign" account opening process in-person at a branch.  The DAA in effect at the time each Plaintiff agreed to be bound by its terms—and subsequent versions in effect when Plaintiffs were purportedly

---

[1] This Court's January 30, 2023 Order (Rec. Doc. No. 29) "stay[ed] the time to answer, move or otherwise respond to the Complaint pending further order" once Defendants filed their pre-motion letter.  (Rec. Doc. No. 29).  Defendants hereby reserve all rights and defenses they may have with respect to the pleading and merits of Plaintiffs' claims, including to file early dispositive motions under Fed. R. Civ. P. 12.

[2] When used herein, "Fox Decl." shall refer to the March 16, 2023 Declaration of Barbara Fox, "Garrett Decl." shall refer to the March 16, 2023 Declaration of William A. Garrett, "Heyen Decl." shall refer to the March 15, 2023 Declaration of John Heyen, "Kesterson Decl." shall refer to the March 17, 2023 Declaration of Kevin Kesterson, and "Martinez Decl." shall refer to the March 16, 2023 Declaration of Jessica D. Martinez, all submitted herewith.

[3] Zelle is an instant payment service owned by EWS and offered by participating banks (including Chase) that comes embedded in banking apps and is used to facilitate payments between participating banks.

injured and when they filed their claims in this case—contained binding arbitration and class action waiver provisions.  After opening their Accounts, both Plaintiffs also agreed to Chase's Digital Services Agreement ("DSA") and the Zelle Agreement, both of which also contained binding arbitration and class action waiver provisions, as did later-in-time versions in effect when Plaintiffs were purportedly injured and when they filed their claims.  Alongside signatory Chase, EWS is entitled to enforce the Plaintiffs' agreement to arbitrate either as a third-party beneficiary or under the doctrine of equitable estoppel.  Indeed, the Zelle Agreement and New DSA[4] in effect before this lawsuit was filed specifically permit EWS to enforce the arbitration provision.

In short, both Plaintiffs entered into multiple agreements that require them to arbitrate claims relating to their Accounts, the use of Chase's websites and mobile applications, and/or the use of Zelle on an individual basis and prohibit them from pursuing their claims on a putative class basis.  To permit them now to rely on such agreements to support their claims against Defendants but then selectively repudiate arbitration and class action waiver provisions therein "would not only flout equity" but undermine "the congressional purpose underlying the Federal Arbitration Act [("FAA")]."[5] This Court should decline to permit Plaintiffs to "have it both ways" and grant this Motion, compel individual arbitration, and stay this matter pending arbitration completion.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    Plaintiffs Both Agreed To The DAA When Opening Their Accounts

Plaintiffs Curtis and Bennett-Morales opened their Accounts with Chase on October 7, 2019 and April 25, 2019, respectively, both in-person at different branches.  Heyen Decl. ¶¶ 3-7; Martinez Decl. ¶¶ 3-7.  Both Plaintiffs needed to, and did, complete the "Click to Sign" account opening process to open their new Accounts and have Personal Electronic Signature Cards issued

---

[4] The "New DSA" is the Consolidated Digital Services Agreement.  *See* Kesterson Decl. ¶¶ 9-10 and Ex. C.
[5] *Tepper Realty Co. v. Mosaic Tile Co.*, 259 F. Supp. 688, 692-93 (S.D.N.Y. 1966) (stay pending arbitration).

for their Accounts.  Heyen Decl. ¶¶ 4, 7, 11-12, 15, 29; Martinez Decl. ¶¶ 4, 7, 10-11, 14, 28.

Chase's "Click to Sign" process required each Plaintiff to take control of the computer, monitor, keyboard, and mouse and then take multiple steps by personally scrolling through each document and clicking to confirm accuracy and/or manifesting acknowledgement to the terms thereof.  Heyen Decl. ¶¶ 13-28; Martinez Decl. ¶¶ 12-27.  As part of these steps, each Plaintiff was required to personally scroll through and acknowledge the terms of the DAA governing their new account(s) by personally clicking a conspicuous "Acknowledge" button.  Heyen Decl. ¶¶ 18-21; Martinez Decl. ¶¶ 17-20.[6]  Each Plaintiff acknowledged the terms of and agreed to be bound by the DAA, as the account opening process would not have proceeded to the next step otherwise (let alone be completed and a Personal Electronic Signature Card issued).  Heyen Decl. ¶¶ 11, 15, 30; Martinez Decl. ¶¶ 10, 14, 29.  Each Personal Electronic Signature Card acknowledged receipt of the DAA and agreement to "be bound by the terms and conditions contained therein as amended from time to time."  Heyen Decl. Ex. A at 1; Martinez Decl. Ex. A at 1.

A visual depiction of the flow and sequence of Chase's "Click to Sign" account opening process in 2019 when Plaintiffs opened their Accounts is annexed to the Heyen Decl. as Ex. B.

Subsequent updates to the DAA were made available to Plaintiffs after they opened their Accounts and monthly account statements for the Accounts contained language stating that the Accounts are governed by the currently effective DAA.  Fox. Decl. ¶¶ 3, 13.

### B.    The DAA Contains A Binding Arbitration Provision

The DAA in place at the time both Plaintiffs opened their Accounts provides as follows:

You and we agree that upon the election of either of us, ***any dispute relating in any way to***

---

[6] The DAA plainly confirms that it is the agreement "that governs" the Accounts.  *See* Fox. Decl. Ex. A at 3, Ex. B at 5, Ex. C at 5, and Ex. D at 3 (noting also that the DAA is the "basic agreement" between the accountholder and Chase and that "[b]y signing a signature card . . . or by using any of our deposit account services, you and anyone else identified as an owner of the account agree to the terms in this agreement.").  Plaintiffs both regularly used their Accounts, including in recent months, after opening them in 2019.  Heyen Decl. ¶ 8; Martinez Decl. ¶ 8.

> **your account or transactions** will be resolved by binding arbitration as discussed below, and not through litigation in any court (except for matters in small claims court).
>
> This arbitration agreement is entered into pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA").
>
> YOU HAVE A RIGHT TO OPT OUT OF THIS AGREEMENT TO ARBITRATE, AS DISCUSSED BELOW. UNLESS YOU OPT OUT OF ARBITRATION, YOU AND WE ARE WAIVING THE RIGHT TO HAVE OUR DISPUTE HEARD BEFORE A JUDGE OR JURY, OR OTHERWISE TO BE DECIDED BY A COURT OR GOVERNMENT TRIBUNAL. **YOU AND WE ALSO WAIVE ANY ABILITY TO ASSERT OR PARTICIPATE IN A CLASS OR REPRESENTATIVE BASIS IN COURT OR IN ARBITRATION**. ALL DISPUTES, EXCEPT AS STATED BELOW, MUST BE RESOLVED BY BINDING ARBITRATION . . . .

Fox. Decl. ¶¶ 5, 10, Ex. A at 13-14, Ex. D at 14 (emphases added, caps in original). The arbitration provision in place at the time thus broadly covers any claims or disputes arising from or related to the DAA and/or the Accounts, related transactions, or related services, noting:

> **What claims or disputes are subject to arbitration?**
>
> Claims or disputes between you and us **about your deposit account**, **transactions involving your deposit account**, safe deposit box, **and any related service with us are subject to arbitration**. **Any claims or disputes arising from or relating to this agreement**, any prior account agreement between us, or the advertising, the application for, or the approval or establishment of your account are also included. Claims are subject to arbitration, regardless of what theory they are based on or whether they seek legal or equitable remedies. Arbitration applies to any and all such claims or disputes, whether they arose in the past, may currently exist, or may arise in the future. . . .

*Id.* Ex. A at 14 and Ex. D at 14 (emphases added). Importantly, the DAA in effect at the time both Plaintiffs opened their Accounts stated they must pursue claims on an individual basis and may not pursue a class claim or proceed as a class action. *Id.* Ex. A at 14 and Ex. D at 14 ("Claims in arbitration will proceed on an individual basis, on behalf of the named parties only. YOU AND WE AGREE NOT TO . . . BE PART OF . . . ANY CLASS ACTION . . ."). At Account opening, the DAA outlines procedures governing arbitration. *Id.* Ex. A at 14 and Ex. D at 14.

Subsequent versions of the DAA—which Plaintiffs agreed to when they executed Personal Electronic Signature Card for their Accounts, *supra* at 2-3—continued to maintain substantially

similar binding arbitration provisions, including in those versions of the DAA in effect when Plaintiffs were allegedly injured and when they filed their respective claims against Defendants. Fox. Decl. ¶¶ 6-8, 11-12, Ex. B at 25-26, Ex. C at 25-26.  Plaintiffs ratified their acceptance of the DAA, as amended, as they continued to use their Accounts.  Heyen Decl. ¶ 8; Martinez Decl. ¶ 8.

The DAA permitted Plaintiffs to "opt out" of arbitration by notifying Chase of such election within 60 days of opening their Accounts by calling a toll-free number or contacting a Chase banker.  Garrett Decl. ¶ 2.  Chase tracks DAA and other opt-out requests, and its records do not reflect any opt-out request from either Plaintiff.  *Id.* ¶¶ 3-5.

**C.**     **Plaintiffs Both Agreed To The DSA And Ms. Curtis Agreed To The New DSA**

Chase's records reflect that both Ms. Curtis and Ms. Bennett-Morales enrolled in online banking services and agreed to Chase's Digital Service Agreement ("DSA") on November 18, 2019 and May 21, 2019 and thus 42 days and 26 days after they opened their Accounts, respectively.  Kesterson Decl. ¶¶ 3-4, 20-21.  During that enrollment process, Plaintiffs were required to affirmatively click boxes acknowledging that each of them had read and accepted the DSA.  *Id.* ¶¶ 4, 21.  Prior to providing such acknowledgements, Plaintiffs would have been provided electronic access to the DSA for review by hyperlink.  *Id.* ¶¶ 4, 21.  If both Plaintiffs had not provided the above-referenced acknowledgement clicks with respect to their review and acceptance of the terms of the DSA, neither of them would have been permitted to proceed or to partake in such digital products and services, nor would the DSA appear in Chase's Admin Tool database as an agreement they both accepted.  *Id.* ¶¶ 4, 21.  Both DSA versions that Plaintiffs consented to make clear that it may be amended from time to time and that continued use of Digital Platforms is considered agreement to those changes.  *Id.* Ex. A at 3 and Ex. I at 3.

A visual depiction of the flow and sequence of Chase's process for enrolling a new customer in online services, as of Q4 2022, is annexed to the Kesterson Decl. as Ex. D.

Screenshots 8 and 9 reflect (1) what an accountholder would see with respect to reading and agreeing to the terms of the DSA, including having access to the full agreement in effect at that time for review by hyperlink, and (2) how the accountholder would have to check the box saying "I agree to the Digital Services Agreement" in order to complete their enrollment and activate their online service. *Id.* ¶ 11. Users enrolling in 2019, including Plaintiffs, would have had a substantially similar view when accepting the terms of the DSA in effect at the time, including by needing to affirmatively click to acknowledge reading and acceptance. *Id.* ¶¶ 11, 21.[7]

    **D.**    **The DSA And The New DSA Contain Binding Arbitration Provisions**

The DSA in place at the time both Plaintiffs enrolled in online banking services provided:

**Binding Arbitration**

YOU AND WE AGREE THAT UPON THE ELECTION OF EITHER OF US, ***ANY DISPUTE RELATING IN ANY WAY TO THIS AGREEMENT, OR YOUR USE OF THE DIGITAL PLATFORMS AND SERVICES, WILL BE RESOLVED BY BINDING ARBITRATION*** AS DISCUSSED BELOW, AND NOT THROUGH LITIGATION IN ANY COURT (EXCEPT FOR MATTERS IN SMALL CLAIMS COURT). THIS ARBITRATION AGREEMENT IS ENTERED INTO PURSUANT TO THE FAA.

YOU AND WE ARE WAIVING THE RIGHT TO HAVE OUR DISPUTE HEARD BEFORE A JUDGE OR JURY, OR OTHERWISE TO BE DECIDED BY A COURT OR GOVERNMENT TRIBUNAL. YOU AND WE ALSO WAIVE ANY ABILITY TO ASSERT OR PARTICIPATE IN A CLASS OR REPRESENTATIVE BASIS IN COURT OR IN ARBITRATION. ALL DISPUTES, EXCEPT AS STATED BELOW, MUST BE RESOLVED BY BINDING ARBITRATION WHEN EITHER YOU OR WE REQUEST IT.

**What claims or disputes are subject to arbitration?**

Claims are subject to arbitration, regardless of what theory they are based on or whether they seek legal or equitable remedies. Arbitration applies to any and all such Claims, whether they arose in the past, may currently exist or may arise in the future....

---

[7] Chase's records also reflect that Ms. Curtis agreed to the New DSA on December 30, 2022 after she filed this lawsuit on December 5, 2022 (but before she filed the Amended Complaint on March 2, 2023). Kesterson Decl. ¶ 9. During that enrollment process, Ms. Curtis was required to affirmatively click boxes acknowledging that she had read and accepted the New DSA. *Id.*

Kesterson Decl. ¶¶ 7, 24, Ex. A at 4-5; Ex. I at 5 (non-header emphases added).  The arbitration provision thus broadly covers any "Claim," defined as "any dispute, claim or controversy arising now or in the future under or relating in any way to this Agreement, the Digital Platforms or the Services." *Id.* Ex. A at 10 and Ex. I at 10.  "Digital Platforms," in turn, is broadly defined to cover Chase "websites or mobile applications." *Id.* Ex. A at 1 and Ex. I at 1.  And "Services" is broadly defined to include "Mobile Services" and "Online Services" available on Digital Platforms and certain third-party digital platforms, including "Transfers." *Id.* Ex. A at 1 and Ex. I at 1. Importantly, the DSA both Plaintiffs agreed to in enrolling for online services stated they must pursue claims on an individual basis and not as a class action. *Id.* Ex. A at 5 and Ex. I at 5.[8]

The April 1, 2021 version of the DSA (in effect when Plaintiffs were allegedly injured and when they first filed their respective claims) and the New DSA agreed to by Ms. Curtis on December 30, 2022 (before she filed her Amended Complaint) contain substantively identical binding arbitration provisions. *Id.* ¶¶ 8-10, 25, Ex. B at 5-6, Ex. C at 7-8.  The New DSA's Zelle Addendum also expressly states that EWS may enforce this provision. *Id.* Ex. C ¶ 13.[9]

### E.    Plaintiffs Both Agreed To The Zelle Agreement

Chase's records reflect that both Ms. Curtis and Ms. Bennett-Morales agreed to the Zelle Agreement on October 16, 2019 and February 15, 2023, respectively.  Kesterson Decl. ¶¶ 12, 26. During that enrollment process, both Plaintiffs were required to and would have had to affirmatively click boxes acknowledging that they had read and accepted the Zelle Agreement. *Id.* ¶¶ 12, 26.  Prior to providing such acknowledgements, Plaintiffs would have been provided

---

[8] The DSA outlined governing arbitration procedures, too.  Kesterson Decl. Ex. A at 6 and Ex. I at 6-7.

[9] Unlike the DAA, the DSA arbitration provision does not contain language concerning the ability to opt out of arbitration.  Kesterson Decl. Ex. A at 4-5, Ex.  B at 5-6, and Ex. I at 5.  And while the New DSA does provide the possibility for opting out, any such attempt by Ms. Curtis after accepting the New DSA would be moot as it would post-date her filing of the Complaint.  *See id.* ¶ 10 and Ex. C at 8.

electronic access to the Zelle Agreement for review by hyperlink.  *Id.* ¶¶ 12, 26.  If Plaintiffs had

not provided the above-referenced acknowledgement clicks with respect to their review and

acceptance of the terms of the Zelle Agreement, the Zelle Agreement would not appear in Chase's

Admin Tool database as an agreement they both accepted.  *Id.* ¶¶ 12, 26.  Both Zelle Agreement

versions that Plaintiffs consented to make clear that it may be amended from time to time and that

continued use of Zelle constitutes agreement to those changes.  *Id.* Ex. F at 1 and Ex. H at 2.

A visual depiction of Chase's Zelle enrollment and activation process in 2019 and in 2023

is annexed to the Kesterson Decl. as Ex. E, and like the DSA, provided access to the full Zelle

Agreement in effect at that time by hyperlink and required the accountholder to check a box

confirming their agreement to the terms thereof.  *See* Kesterson Decl. ¶¶ 14, 28 and Exs. E(1)-(4).

### F.     The Zelle Agreement Contains A Binding Arbitration Provision

The Zelle Agreement in effect when Ms. Curtis enrolled to use Zelle provided:

**Binding Arbitration**

**YOU HEREBY AGREE THAT *ANY* DISPUTE, CLAIM OR CONTROVERSY ARISING NOW OR IN THE FUTURE UNDER OR RELATING IN ANY WAY TO THIS AGREEMENT, OR TO THE SERVICE ("CLAIM"), REGARDLESS OF THE NATURE OF THE CAUSE(S) OF ACTION ASSERTED (INCLUDING CLAIMS FOR INJUNCTIVE, DECLARATORY, OR EQUITABLE RELIEF), SHALL BE RESOLVED BY BINDING ARBITRATION. . . . YOU FURTHER AGREE THAT YOU WILL NOT BE ABLE TO BRING A CLASS ACTION OR OTHER REPRESENTATIVE ACTION (SUCH AS AN ACTION IN THE FORM OF A PRIVATE ATTORNEY GENERAL) TO LITIGATE ANY CLAIMS IN COURT BEFORE EITHER A JUDGE OR JURY; NOR WILL YOU BE ABLE TO PARTICIPATE AS A CLASS MEMBER IN A CLASS ACTION OR OTHER REPRESENTATIVE ACTION . . . CLAIMS IN ARBITRATION SHALL PROCEED ON AN INDIVIDUAL BASIS ONLY AND YOU AGREE THAT YOU WILL NOT BE ABLE TO PROCEED ON ANY CLAIM IN ARBITRATION AS A CLASS CLAIM OR CLASS ACTION OR OTHER COMPARABLE REPRESENTATIVE PROCEEDING . . . .**

Kesterson Decl. ¶ 17 and Ex. F at 5-6 (underline italic emphases added, bold emphases in original).

Subsequent versions thereof, including the Zelle Agreement in effect when Ms. Bennett-Morales

enrolled to use Zelle, contain substantively identical binding arbitration provisions.  *Id.* ¶¶ 18-19, 30, Ex. G at 7, Ex. H. at 7-8.  The Zelle Agreement in effect prior to the filing of Ms. Curtis' Complaint in this case and at the time of Ms. Bennett-Morales' enrollment —and necessarily prior to her joining this case and the filing of the Amended Complaint—also expressly states that "[y]ou acknowledge and agree that for any claims or disputes you assert against Zelle® and [EWS], Zelle® and [EWS] are entitled to enforce this arbitration provision against you."  *Id.* Ex. H at 8.[10]

### G.      Plaintiffs' Claims And Reliance On Agreements with Chase

Ms. Curtis filed the initial Complaint in this action on December 5, 2022, asserting five causes of action, including a breach of contract claim against Chase premised on three contractual agreements, including the DAA and Zelle Agreement.  (Rec. Doc. 1).  Ms. Bennett-Morales joined as a named Plaintiff and the Amended Complaint was filed on March 2, 2023.  (Rec. Doc. 42).[11] Both Plaintiffs concede that their Accounts, like all Chase deposit accounts, are governed by the DAA.  Am. Compl. ¶ 80.  They also concede that they both enrolled in and used online banking services, including Zelle, through their Chase Accounts.  *Id.* ¶¶ 93, 100, 103, 114, 116.

Ms. Curtis alleges that she voluntarily used Chase's mobile banking application to send funds via Zelle to purported fraudsters from her Account, and after reporting the fraud was not refunded for these transfers.  *Id.* ¶¶ 93-113.  Ms. Bennett-Morales alleges that her Account was accessed by fraudsters and funds were sent using Zelle without her authorization.  *Id.* ¶¶ 119-122. Thus, both individual claims relate to the Accounts, Chase online banking services, and Zelle.

Both the original Complaint and Amended Complaint rely on a Chase "Online Service Agreement For Consumer Customers With Checking Accounts" dated September 13, 2020 (the

---

[10] Unlike the DAA, the Zelle Agreement arbitration provision does not contain language concerning the ability to opt out of arbitration.  *See generally id.* Exs. F at 5-6, Ex. G at 7, Ex. H at 7-8.
[11] This Court granted Defendants leave to move to individually arbitrate both Plaintiffs' claims.  (Rec. Doc. 41).

"Online Agreement") to support their claims, in addition to the DAA and Zelle Agreement.  (Rec.

Doc. 1 ¶¶ 82-83, Rec. Doc. 42 ¶¶ 83-84).  That Online Agreement, the agreement prior to the DSA

relating to online banking services, provides as follows:

> YOU HEREBY AGREE THAT ANY DISPUTE, CLAIM OR CONTROVERSY ARISING NOW OR IN THE FUTURE UNDER OR RELATING IN ANY WAY TO THIS AGREEMENT, OR TO THE ONLINE SERVICE ("CLAIM") . . . SHALL BE RESOLVED BY BINDING ARBITRATION.

(Rec. Doc. 33-5 at 8-9 (§ 12)).  It too contains a class action waiver provision.  *Id.*

## ARGUMENT

### I.   THIS COURT SHOULD COMPEL ARBITRATION OF PLAINTIFFS' CLAIMS PURSUANT TO THE AGREEMENTS

The FAA, which applies here, provides that an agreement to arbitrate "shall be valid,

irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation

of any contract."  9 U.S.C. § 2.  Per that statutory mandate, the Supreme Court has held that the

FAA established "a liberal federal policy favoring arbitration agreements" and that courts must

"rigorously enforce" them "according to their terms."  *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612,

1621 (2018); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (similar); *see also,*

*e.g., Doe #1 v. Coll. Bd.*, 440 F. Supp. 3d 349, 354 (S.D.N.Y. 2020) (Schofield, J.) (noting the FAA

"embodies a national policy favoring arbitration based on the desire to preserve the parties' ability

to arbitrate, not litigate their disputes").  The applicable standard in this Circuit is necessarily

whether (1) a valid agreement to arbitrate exists and (2) whether the litigation falls within its scope.

*Scott v. JPMorgan Chase & Co.*, 603 F. App'x 33, 35 (2d Cir. 2015) (affirming stay pending

arbitration based on Chase's DAA).  If the answer to both of these questions is yes, then the court

is required to compel arbitration and stay the action pending arbitration.  *See* 9 U.S.C. §§ 2, 3.

On this Motion, the court may "consider[] all relevant, admissible evidence submitted by

the parties and contained in pleadings ... together with … affidavits."  *Meyer v. Uber Techs., Inc.*,

868 F.3d 66, 74 (2d Cir. 2017) (internal quotation marks and citation omitted) (reversing district court finding that parties had not agreed to arbitrate). Here, the evidence submitted by Chase establishes that Plaintiffs both agreed to not one, but ***at least three*** arbitration provisions that broadly encompass their claims, including in the DAA which has been repeatedly recognized as valid and enforceable, including in this District. The Motion should be granted in its entirety.

### A.    The Plaintiffs Entered Into Valid Agreements To Arbitrate

To resolve whether an agreement to arbitrate "can be enforced, the district court must first determine whether such agreement exists between the parties. . . . This question is determined by state contract law." *Meyer*, 868 F.3d at 73-74 (citation omitted). Here, regardless of whether New York or California law applies—where Ms. Curtis and Ms. Bennett-Morales opened their Accounts, respectively—Plaintiffs clearly entered into valid agreements to arbitrate.

The Second Circuit has noted "that New York and California apply substantially similar rules for determining whether the parties have mutually assented to a contract term." *Meyer*, 868 F.3d at 74. A finding of mutual assent does not depend on the subjective intent of the parties, but rather on the terms of the contract and the familiar elements of offer, acceptance, and consideration.[12] Here, Plaintiffs agreed to arbitrate their claims during the account opening process for their Accounts, both by affirmatively clicking to acknowledge their agreement to the DAA and then executing Personal Electronic Signature Cards. They then agreed to arbitrate by affirmatively clicking to acknowledge that they had read and accepted the DSA and the Zelle Agreement.

### 1.    *Both Plaintiffs Assented To The DAA*

When Plaintiffs applied for their Accounts, they were offered services subject to the terms

---

[12] *See Rollins v. Goldman Sachs & Co. LLC*, 2019 WL 2754635, at *6 (S.D.N.Y. July 2, 2019) ("under New York law, there must be an offer, acceptance, consideration, mutual assent and intent to be bound," and "[c]ourts can infer acceptance when the party demonstrated at least constructive knowledge of the terms through his actions"); *Peter v. Doordash, Inc.*, 445 F. Supp. 3d 580, 585 (N.D. Cal. 2020) ("[a]ssent is evaluated by an objective standard").

and conditions of the DAA and accepted Chase's offer by (1) completing the "Click to Sign" process and affirmatively clicking a button acknowledging their receipt and acceptance of the DAA and (2) then electronically signing a signature card stating that they acknowledged receipt of and "agree[d] to be bound by the terms and conditions of the DAA." *See supra* at 2-5.

Courts in the Second Circuit routinely hold that signing a signature card when opening a bank account, like Plaintiffs did here, demonstrates assent. *See, e.g.*, *United States v. Bank of Am.*, 2009 WL 2009022, at *6 (W.D.N.Y. Feb. 20, 2009) (applying New York law, citing *David v. Mfrs. Hanover Tr. Co.*, 59 Misc. 2d 248, 248 (App. Term 2d Dep't 1969)) ("the terms set forth in [a] signature card executed by [a] plaintiff depositor and the statements of account which are referred to therein constitute[] a valid contract between the [] depositor and defendant bank"). Indeed, courts in this District have regularly enforced the very same Chase DAA arbitration provision at issue in this case, where, as here, evidence was submitted that the depositors signed signature cards incorporating the DAA and/or received copies of the DAA. *See, e.g.*, *KPA Promotion & Awards, Inc. v. JPMorgan Chase & Co.*, 2021 WL 1317163, at *1-2, *4 (S.D.N.Y. Apr. 8, 2021) (granting motion to compel on DAA where Chase established "that plaintiffs agreed to the terms of the DAA … when they opened accounts"); *Dill v. JPMorgan Chase Bank, N.A.*, 2020 WL 4345755, at *2-3, *7-8 (S.D.N.Y. Jul. 29, 2020) (similar); *Scott v. JPMorgan Chase & Co.*, 2014 WL 338753, at *2-3, *10-11 (S.D.N.Y. Jan. 30, 2014) (similar), *aff'd*, 603 F. App'x 33 (2d Cir. 2015). Federal district courts across the country have reached the same result.[13]

---

[13] *See, e.g.*, *Sha-Poppin Gourmet Popcorn LLC v. JPMorgan Chase Bank, N.A.*, 553 F. Supp. 3d 452, 457 (N.D. Ill. 2021) (holding that "the deposit account agreement's arbitration clause is sufficient to grant Chase's motion to compel"); *Sunmonu v. Chase Bank, N.A.*, 2019 WL 1258788, at *2 (D. Md. Mar. 19, 2019) (rejecting plaintiff's argument that "Chase Bank 'is unable to prove … the existence of a valid and binding agreement between the parties'" where evidence included signed signature cards "indicating [plaintiff's] assent" to the DAA); *Johnson v. JPMorgan Chase Bank, N.A.*, 2018 WL 4726042, at *3-4 (C.D. Cal. Sept. 18, 2018) (evidence was submitted that depositor signed signature card incorporating DAA); *Sanchez v. J.P. Morgan Chase Bank, N.A.*, 2014 WL 4063046, at *2-3 (S.D. Fla. Aug. 15, 2014) (plaintiffs were provided copies of DAA); *Novak v. JP Morgan Chase Bank, NA*, 2008 WL 907380, at *5 (E.D. Mich. Mar. 31, 2008) (deposit agreement and signature card bore plaintiff's signature).

That Plaintiffs electronically signed their signature card makes no difference to this Court's analysis. Indeed, a plaintiff will be found to have assented to an arbitration provision in a web-based contract "where the notice of the arbitration provision was reasonably conspicuous and manifestation of assent unambiguous as a matter of law." *Meyer*, 868 F.3d at 76 (vacating order denying motion to compel arbitration).[14] Notice and assent are found to exist where the online form prompts the user to agree to the relevant terms and conditions by clicking a specific box or button to that effect and the user so complies. *Id.* at 75.

Here, Plaintiffs completed the "Click to Sign" process that involved a clear and conspicuous notice of the DAA, requiring Plaintiffs to scroll through it, affirmatively click a button marked "Acknowledge" at the end of the agreement before they could continue to the next account opening step, and affirmatively click to execute the signature card once again acknowledging receipt of and an agreement to be bound by the DAA. *See* Heyen Decl. ¶¶ 11-30; Martinez Decl. ¶¶ 10-29. This process is thus similar to the process in *Meyer*, which also involved a button as "the mechanism for manifesting assent." 868 F.3d at 78; *see also id.* at 75 ("Courts routinely uphold" online agreements where "the user has affirmatively assented to the terms of agreement by clicking 'I agree,'" whether in the form of "clickwrap agreements" or "scrollwraps.").[15]

Plaintiffs further assented to the DAA's arbitration provision by their continual use of their Chase accounts. Heyen Decl. ¶ 8; Martinez Decl. ¶ 8; *Anonymous v. JP Morgan Chase &*

---

[14] The Second Circuit in *Meyer* applied California law principles of contract formation, but as noted above, New York and California law is substantially similar on the question of mutual assent.

[15] *See also, e.g.*, *Flores v. Chime Fin., Inc.*, 2022 WL 873252, at *5-6 (S.D.N.Y. Mar. 23, 2022) (compelling arbitration where user would not have been able to open an account without affirmatively agreeing to clickwrap deposit account agreement); *Hidalgo v. Amateur Athletic Union of the U.S., Inc.*, 468 F. Supp. 3d 646, 657 (S.D.N.Y. 2020) (compelling arbitration where "it would have been impossible for the plaintiff to complete his membership application without checking the box that gave assent to the terms and conditions"); *Plazza v. Airbnb, Inc.*, 289 F. Supp. 3d 537, 548-49 (S.D.N.Y. 2018) (compelling arbitration where defendant's website "would not allow users to access any part of Airbnb's website or continue using the platform until they indicated their assent to the TOS" and after scrolling users had to click a check box to "agree").

*Co.*, 2005 WL 2861589, at *4 (S.D.N.Y. Oct. 31, 2005) (holding that plaintiff entered into valid agreement to arbitrate based on "uncontested evidence that the plaintiff used [his] Chase card and made payments to Chase for that use for several months"). Moreover, Plaintiffs were each given an opportunity after opening their accounts to opt out of the DAA arbitration provision but declined to do so, further signaling their assent. Garrett Decl. ¶¶ 2-5; *Pelligrino v. Morgan Stanley Smith Barney LLC*, 2018 WL 2452768, at *3 (S.D.N.Y. May 31, 2018) (a failure to opt-out "'compel[s] the conclusion' that Plaintiff[s] are bound by the Arbitration Agreement").

### 2.  *Both Plaintiffs Assented To The DSA And Zelle Agreement*

Plaintiffs also agreed to arbitrate their claims when they agreed to the DSA and the Zelle Agreement. In both cases, Plaintiffs assented when, after receiving a hyperlink to access and read the underlying agreement, they affirmatively clicked boxes acknowledging that they had read and accepted the DSA and Zelle Agreement's terms. *Supra* at 5-8; Kesterson Decl. ¶¶ 4, 9, 11, 12, 14, 21, 26, 28. Such affirmative clicking to constitute acceptance after being provided access to an agreement by hyperlink is routinely deemed a manifestation of assent. *See Meyer*, 868 F.3d at 79-80 ("A reasonable user would know that by clicking the [ ] button, he was agreeing to the terms and conditions accessible via the hyperlink, whether he clicked on [it] or not"); *see also Thorne v. Square, Inc.*, 2022 WL 542383, at *9-12 (E.D.N.Y. Feb. 23, 2022) (compelling arbitration); *Whitt v. Prosper Funding LLC*, 2015 WL 4254062, at *4 (S.D.N.Y. July 14, 2015) (same).

### B.  **Plaintiffs' Claims Are Covered By The Arbitration Provisions**

Plaintiffs' claims fall squarely within the scope of the broad arbitration provisions they both agreed to and, therefore, individual arbitration should be compelled. *See AT&T Techs, Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) ("[T]here is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that

14

covers the asserted dispute.'"); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."); *Doe*, 440 F. Supp. 3d at 354 (same).

It is well-settled that "[t]o determine whether a dispute falls within the scope of an agreement's arbitration clause, a court should first classify the clause as either broad or narrow." *National Union Fire Ins. Co. v. Champps Entm't, Inc*., 2004 WL 2884304, at *2 (S.D.N.Y. Dec. 13, 2004). In making this determination, "the Court must determine whether the language of the clause, taken as a whole, evidences the parties' intent to have arbitration serve as the primary recourse for disputes connected to the agreement containing the clause or if, on the other hand, arbitration was designed to play a more limited role." *Dill,* 2020 WL 4345755, at *6. Here, the arbitration provisions are "paradigm[atic] of a broad clause." *Alghanim v. Alghanim*, 828 F. Supp. 2d 636, 652 (S.D.N.Y. 2011). Indeed, this Court has found that when an arbitration clause contains broad language that "*all* disputes arising from [the contract] shall be … decided by … arbitration," all "claims concerning a collateral matter or matters covered by the parties' contracts are presumed to be arbitrable." *Salzano v. Lace Ent. Inc.*, 2014 WL 3583195, at *2-*3 (S.D.N.Y. July 18, 2014) (Schofield, J.). That is plainly the case here, as the DAA covers "[a]ny claims or disputes arising from or relating to this agreement" and "any dispute relating in any way to your account or transactions," including any "[c]laims or disputes between you and us about your deposit account, transactions involving your deposit account, . . . and any related service with us." *Supra* at 3-4.

To be sure, courts that have considered the arbitration provision in the DAA have confirmed that it is "broad" and ordered arbitration of disputes between Chase and its customers relating to their Accounts. *See, e.g.*, *Dill*, 2020 WL 4345755, at *6 (concluding that the "language of the DAA's arbitration provision is indisputably broad" and thus "create[s] a strong presumption

15

of arbitrability"); *Sunmonu*, 2019 WL 1258788, at *2 (the DAA "defines arbitrable claims broadly"); *see also KPA Promotions*, 2021 WL 1317163, at *5 n.9 (noting "[w]ere the Court to address the scope of the arbitration provisions, . . . [t]he arbitration provision[] of the DAA . . . [is] plainly broad enough to encompass plaintiffs' claims"). And the arbitration provisions in the DSA, New DSA, and Zelle Agreement are equally broad, encompassing "any" claim or dispute relating to the use of digital services, Zelle, or the agreements themselves—all of which are prominently featured in Plaintiffs' own pleading. *Supra* at 6-8.

### C.    EWS Is Entitled To Enforce The Agreement To Arbitrate

First, although EWS is not a signatory to the Zelle Agreement, it is nonetheless entitled to enforce the arbitration provision therein because EWS is a third-party beneficiary. The Zelle Agreement that Ms. Bennett-Morales agreed to, and that was in effect before Ms. Curtis filed this lawsuit, expressly provides that "[y]ou acknowledge and agree that for any claims or disputes you assert against Zelle® and [EWS], ***Zelle® and [EWS] are entitled to enforce this arbitration provision against you***." *See* Kesterson Decl. ¶¶ 19, 30 and Ex. H at 8 (emphasis added). [16] Even if the arbitration provision in the Zelle Agreement did not specifically identify EWS (as is the case with the earlier version), EWS could still enforce the arbitration provision because it was intended to benefit EWS and that the benefit was "sufficiently immediate." *Greater Bright Light Home Care Servs., Inc. v. Jeffries-El*, 58 N.Y.S.3d 68, 74-75 (N.Y. App. Div. 2017). Indeed, "the identity of a third-party beneficiary need not be set forth in the contract or, for that matter, even be known as of the time of its execution." *MK West Street Co. v. Meridien Hotels, Inc.*, 184 A.D.2d 312, 313 (N.Y. App. Div. 1992). Rather, the intended beneficiary need only be one of "a class of

---

[16] The New DSA's Zelle Addendum also contains this same language permitting EWS to enforce the arbitration provision. *See* Kesterson Decl. Ex. C, Zelle Addendum, ¶ 16.

persons intended to be benefited." *Vandewater & Lapp v. Sacks Builders, Inc.*, 186 N.Y.S.2d 103, 106 (N.Y. App. Term 1959).  Here, the Zelle Agreement "states the terms and conditions that govern [Plaintiffs'] use of the Zelle Service." Kesterson Decl. Ex. F at 1 and Ex. G at 1.  EWS falls within the class of persons intended to benefit from the Zelle Agreement (including the arbitration provision) because EWS unquestionably is "involve[d] in the provision of the [Zelle] Service."  *Id.* Ex. F at 2 and Ex. G at 3.  This Court should reach the same result as in *Bakon v. Rushmore Services Center, LLC*, 2017 WL 2414639, at *1-*3 (E.D.N.Y. June 2, 2017), which found a non-signatory defendant could compel arbitration as an intended third-party beneficiary, and conclude that EWS is also entitled to do so.

EWS should also be permitted to enforce the arbitration provision in the Zelle Agreement under the doctrine of equitable estoppel, as there is a "close relationship" among the parties and the issues in dispute are "intertwined" with the contract containing the arbitration agreement.  In *Astra Oil Co. v. Rover Navigation, Ltd.,* 344 F.3d 276, 281 (2d Cir. 2003), the Second Circuit compelled the plaintiff to arbitrate its claims against a non-signatory defendant because the plaintiff's claims arose out of the contract containing the arbitration provision and the non-signatory defendant shared a close operational relationship with the original signatory.[17]  Similarly, there can be no question that EWS has a "close relationship" with Chase with respect to the Zelle transactions at issue in the Amended Complaint.[18]  Given that EWS and Chase are "closely related" as it pertains to Plaintiffs' allegations and the Zelle service, it was "reasonably foreseeable" that

---

[17] *See also Smith/Enron Cogeneration Ltd. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 98 (2d. Cir. 1999) (applying equitable estoppel) *Cho v. JS Autoworld 1 Ltd.*, 97 F. Supp. 3d 351, 357 (E.D.N.Y. 2015) (same).

[18] *See, e.g.*, Am. Compl. ¶ 23 (alleging EWS is owned in part by Chase); *id.* ¶ 58 (alleging marketing of the Zelle service is "jointly designed and promulgated by Defendants [EWS and Chase] for their mutual benefit."); *id.* ¶ 68 (alleging "Defendants' online advertising does not adequately inform consumers that Zelle operates unlike other payment options"); *id.* ¶¶ 104-113; 117-138 (alleging Plaintiffs notified Chase and EWS regarding the purported fraud and that neither reimbursed their purported losses).

EWS would seek to enforce the arbitration provision.[19]  Plaintiffs' own pleading demonstrates that the claims arise from the use of Zelle and are "intertwined" with the Zelle Agreement, which governs Plaintiffs' use of Zelle and Plaintiffs specifically reference and rely on it in support of their claims.  *See* Am. Compl. ¶¶ 85, 95-103, 114-138.  As such, Plaintiffs should be equitably estopped from avoiding arbitration under the arbitration provision in the Zelle Agreement.[20]

> **D.    Plaintiffs Should Be Estopped From Repudiating The Arbitration Provisions**

Plaintiffs "cannot have it both ways" and should be estopped from repudiating the arbitration provisions it agreed to with Chase as they expressly relied on those same agreements in bringing suit.  *See Fluor Daniel Inter., Inc. v. Gen. Elec. Co.*, 1999 WL 637236, at *7 (S.D.N.Y. Aug. 20, 1999) (citing *Tepper*, 259 F. Supp. at 692); *see also Doe*, 440 F. Supp. 3d at 355–56.

## II.    THIS ACTION SHOULD BE STAYED PENDING ARBITRATION

Where, as here, claims must be arbitrated and a stay is requested, the FAA mandates that the court "***shall*** . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3 (emphasis added). The Second Circuit has held that this provision "creates an obligation impervious to judicial discretion" and commands that "a stay of proceedings [is] necessary after all claims have been referred to arbitration and a stay requested." *Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015).  This Court should thus stay this case until both arbitrations have been completed.  *See Dill*, 2020 WL 4345755, at *8 (staying case pending arbitration in accordance with DAA); *Johnson*, 2018 WL 4726042, at *9 (same).

### CONCLUSION

For all the reasons set forth herein, this Court should grant the Motion in its entirety.

---

[19] *See, e.g.*, *Cfirstclass Corp. v. Silverjet PLC*, 560 F. Supp. 2d 324, 328 (S.D.N.Y. 2008) (non-signatory was "closely related" to signatory, so its "enforcement of the . . . clause is foreseeable").
[20] *See Astra Oil*, 344 F.3d at 281.

Dated: March 17, 2023                    Respectfully Submitted,

                                         GREENBERG TRAURIG, LLP

                                         By:    */s/ Sylvia E. Simson*

                                                Sylvia E. Simson
                                                One Vanderbilt Avenue
                                                New York, NY 10017
                                                Tel: (212) 801-9200
                                                Fax: (212) 801-6400
                                                sylvia.simson@gtlaw.com

                                                Paul J. Ferak
                                                77 West Wacker Drive, Suite 3100
                                                Chicago, IL 60601
                                                Tel: (312) 476-5013
                                                Fax: (312) 456-8435
                                                ferakp@gtlaw.com

                                                *Attorneys for Defendant*
                                                *JPMorgan Chase Bank, N.A.*

                                         STROOCK & STROOCK & LAVAN LLP

                                         By: */s/ Julia B. Strickland*

                                                Julia B. Strickland
                                                Christopher R. Fredrich
                                                2029 Century Park East, 18th Floor
                                                Los Angeles, CA 90067
                                                Tel: (310) 556-5800
                                                Fax: (310) 556-5959
                                                jstrickland@stroock.com
                                                cfredrich@stroock.com

                                                *Attorneys for Defendant Early*
                                                *Warning Services, LLC*