# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

KEANNA CURTIS and MIRANDA JANE
BENNETT-MORALES, individually and on
behalf of all others similarly situated,

              Plaintiffs,

   v.

JPMORGAN CHASE BANK, N.A.; and
EARLY WARNING SERVICES, LLC d/b/a
ZELLEPAY.COM,

              Defendants.

Case No.1:22-cv-10286-LGS

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO JPMORGAN CHASE
BANK, N.A.'S AND EARLY WARNING SERVICES, LLC'S JOINT MOTION
TO COMPEL INDIVIDUAL ARBITRATION AND STAY THIS ACTION**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................ 1

FACTUAL BACKGROUND............................................................................ 2

    A.    Zelle Fraud Is Rampant and Not Isolated to Plaintiffs......................... 2

    B.    Fraud on the Zelle Transfer Service Harmed Plaintiffs. ...................... 3

    C.    Plaintiffs Opened Chase Accounts in 2019 Without Agreeing to
           Arbitrate Claims................................................................................... 3

          1.    Defendants Fail to Show Assent to the 2019 Deposit Account
                Agreement............................................................................. 4

          2.    Chase Fails to Meet Its Burden to Show Assent to Any Other
                Agreement............................................................................. 5

ARGUMENT................................................................................................... 6

    A.    Choice of Law Analysis Should Be Applied to Plaintiffs.................... 6

    B.    Defendants Fail to Show Plaintiffs Agreed to Binding Arbitration.................... 7

    C.    Even if Formed, the Arbitration Agreements are Unconscionable................... 10

          1.    The Agreements are Procedurally Unconscionable Because
                Consumers Lack Meaningful Choice. .................................. 11

          2.    The Agreements Are Substantively Unconscionable Because
                They Waive Statutory Rights Intended for Public Benefit. ................... 12

    D.    The FAA Does Not Apply Because Fraud by Third Parties Does Not
           "Arise Out of" the Agreements............................................................. 15

    E.    Zelle Cannot Enforce Chase's Agreements as a Third-Party............................ 15

          1.    Zelle Fails to Establish Itself as a Third-Party Beneficiary. .................. 16

           2.    Equitable Estoppel Presents No Bar to Plaintiffs' Claims Against
                Zelle. .................................................................................... 17

    F.    Plaintiffs' Contract Claim Has No Bearing on the Merits of the Motion. ......... 18

CONCLUSION............................................................................................... 18

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Am. Family Life Assurance Co. of N.Y. v. Baker*,
778 F. App'x. 24 (2d Cir. 2019) ........................................................12

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ........................................................................10

*Ayad v. PLS Check Casher of N.Y., Inc.*,
2021 WL 4756091 (E.D.N.Y. July 26, 2021).......................................7

*B.D. v. Blizzard Ent., Inc.*,
292 Cal. Rptr. 3d 47 (Cal. Ct. App. 2022).......................................8, 9

*Belzberg v. Verus Invs. Holdings Inc.*,
999 N.E.2d 1130 (N.Y. 2013)...........................................................15

*Bensadoun v. Jobe-Riat*,
316 F.3d 171 (2d Cir. 2003) ..............................................................6

*Borsack v. Chalk & Vermilion Fine Arts, Ltd.*,
974 F. Supp. 293 (S.D.N.Y. 1997)....................................................16

*Brennan v. Bally Total Fitness*,
198 F. Supp. 2d 377 (S.D.N.Y. 2002) ..........................................12, 15

*Calderon v. Sixt Rent a Car, LLC*,
5 F.4th 1204 (11th Cir. 2021) ..........................................................15

*Davitashvili v. Grubhub Inc.*,
2023 WL 2537777 (S.D.N.Y. Mar. 16, 2023) .....................................8

*DCR Mortg. VI Sub I, LLC v. Peoples United Fin., Inc.*,
50 N.Y.S.3d 144 (N.Y. App. Div. 2017)..............................................5

*Denney v. Jenkins & Gilchrist*,
412 F. Supp. 2d 293 (S.D.N.Y. 2005)................................................17

*Dreyfuss v. eTelecare Glob. Sols.-U.S. Inc.*,
349 F. App'x 551 (2d Cir. 2009) ........................................................7

*Estro Chem. Co. v. Falk*,
100 N.E.2d 146 (N.Y. 1951)..............................................................13

*Gillman v. Chase Manhattan Bank, N.A.*,
    534 N.E.2d 824 (N.Y. 1988)................................................................. 10, 11, 12

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991) .................................................................................13

*Hurlbut v. Christiano*,
    405 N.Y.S.2d 871 (N.Y. App. Div. 1978) ...............................................14

*Ji Dong Cheng v. HSBC Bank USA, N.A.*,
    467 F. Supp. 3d 46 (E.D.N.Y. 2020).......................................................18

*Klos v. Lotnicze*,
    133 F.3d 164 (2d Cir. 1997) ...................................................................14

*Marcus v. Collins*,
    2016 WL 8201629 (S.D.N.Y. Dec. 30, 2016) ..........................................7

*Mayfield v. Asta Funding, Inc.*,
    95 F. Supp. 3d 685 (S.D.N.Y. 2015).......................................................7

*McDonald v. N. Shore Yacht Sales, Inc.*,
    513 N.Y.S.2d 590 (N.Y. Sup. Ct. 1987)...................................................13

*McGill v. Citibank, N.A.*,
    393 P.3d 85 (Cal. 2017)...........................................................................12

*McPheeters v. McGinns, Smith & Co.*,
    953 F.2d 771 (2d Cir. 1992) ....................................................................16

*Medidata Sols., Inc. v. Veeva Sys. Inc.*,
    748 F. App'x 363 (2d Cir. 2018) .............................................................17

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985) ................................................................................13

*Morgan v. Sundance, Inc.*,
    142 S. Ct. 1708 (2022) ............................................................................6

*Nayal v. HIP Network Servs. IPA, Inc.*,
    620 F. Supp. 2d 566 (S.D.N.Y. 2009) .....................................................11

*Nicosia v. Amazon.com, Inc.*,
    834 F.3d 220 (2d Cir. 2016) ............................................................6, 8, 9

*Ohanian v. Apple Inc.*,
    2021 WL 871501 (S.D.N.Y. Mar. 9, 2021)..............................................7

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
    647 N.E. 2d 741 (N.Y. 1995) ............................................................................................... 13

*Parada v. Superior Court*,
    98 Cal. Rptr. 3d 743 (Cal. Ct. App. 2009) ........................................................................... 11

*Republic of Iraq v. ABB AG*,
    769 F. Supp. 2d 605 (S.D.N.Y. 2010) ............................................................................ 16, 18

*Ross v. Am. Express Co.*,
    547 F.3d 137 (2d Cir. 2008) ................................................................................................. 18

*Sellers v. JustAnswer LLC*,
    289 Cal. Rptr. 3d 1 (Cal. Ct. App. 2021) .............................................................................. 8

*Shroyer v. New Cingular Wireless Servs., Inc.*,
    498 F.3d 976 (9th Cir. 2007) ............................................................................................... 11

*Sokol Holdings, Inc. v. BMB Munai, Inc.*,
    542 F.3d 354 (2d Cir. 2008) ................................................................................................. 18

*Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*,
    999 F.3d 828 (2d Cir. 2021) ................................................................................................... 8

*Starke v. SquareTrade, Inc.*,
    913 F.3d 279 (2d Cir. 2019) ................................................................................................... 8

*State v. Avco Fin. Serv. of N.Y. Inc.*,
    406 N.E.2d 1075 (N.Y. 1980) .............................................................................................. 10

*State v. Wolowitz*,
    468 N.Y.S.2d 131 (N.Y. App. Div. 1983) ............................................................................. 7

*In re Stubhub Refund Litig.*,
    2021 WL 5447006 (N.D. Cal. Nov. 22, 2021) ..................................................................... 13

*Timberline Elec. Supply Corp. v. Ins. Co. of N. Am.*,
    421 N.Y.S.2d 987 (N.Y. App. Div. 1979) ........................................................................... 14

*Tuchman v. UBS Fin. Servs. Inc.*,
    2020 WL 13561713 (S.D.N.Y. Nov. 9, 2020) ..................................................................... 15

*Warner v. U.S. Sec. & Futures Corp.*,
    685 N.Y.S.2d 25 (N.Y. App. Div. 1999) ............................................................................. 16

*Zachman v. Hudson Valley Fed. Credit Union*,
    49 F.4th 95 (S.D.N.Y. 2022) ................................................................................................. 8

**STATUTES**

9 U.S.C. § 2 ................................................................................................................ 6, 10, 15

15 U.S.C. § 1693f(e)(2)............................................................................................................14

New York General Business Law §§ 349, 350.........................................................................13

**OTHER AUTHORITIES**

*Examining Mandatory Arbitration in Financial Service Products*, Testimony
    Before the U.S. Senate Comm. on Banking, Housing and Urban Affairs, 117
    Cong. (Mar. 7, 2022) (testimony of Prof. Myriam Gilles),
    https://www.banking.senate.gov/imo/media/doc/Gilles%20Testimony%203-8-
    22.pdf...................................................................................................................................1

# PRELIMINARY STATEMENT

Plaintiffs Keanna Curtis and Miranda Jane Bennett-Morales ("Plaintiffs") oppose JPMorgan Chase Bank, N.A.'s ("Chase") and Early Warning Services, LLC's d/b/a zellepay.com ("Zelle") (collectively "Defendants") Joint Motion to Compel Individual Arbitration and Stay This Action (the "Motion"), ECF No. 45. Defendants seek to deny Plaintiffs their day in court by forcing them into arbitration, well-known to limit consumer relief and public accountability.[1]

To prevail, *both* Chase and Zelle must show that *both* Plaintiffs agreed to arbitrate *these* claims, which arise out of fraud committed with the Zelle transfer service. What Defendants proffer instead is a hodgepodge of declarations and screenshots with speculation about what each Plaintiff "would have" seen, with no specifics. Nowhere is there any showing of any arbitration clause *as actually presented* to Plaintiffs. "Zelle" does not even appear in the 2019 Deposit Account Agreement ("2019 DAA"), a document Defendants say was provided to Plaintiffs when they opened their accounts and purportedly "include[d] *all provisions* that apply to this [Plaintiffs'] account[s]." ECF No. 49-1 at p. 2 (emphasis added); ECF No. 50-1 at p. 2 (same). Defendants later imposed additional agreements, all of which were presented in a "Click-to-Agree" format with a hyperlink and no visible mention of arbitration. But even if Defendants could establish that arbitration agreements were actually visible *to Plaintiffs* as Defendants describe, no reasonable bank customer could have known that fraud carried out by a third-party fraudster using the Zelle transfer service three years later could only be resolved through an arbitration procedure as determined by Chase and Zelle. Close examination of the incomplete

---

[1] *See Examining Mandatory Arbitration in Financial Service Products*, Testimony Before the U.S. Senate Comm. on Banking, Housing and Urban Affairs, 117 Cong. (Mar. 7, 2022) (testimony of Prof. Myriam Gilles), https://www.banking.senate.gov/imo/media/doc/Gilles%20Testimony%203-8-22.pdf.

documents submitted by Defendants with their Motion demonstrates that Defendants fail to meet their burden to show Plaintiffs' agreement to arbitrate with both Defendants.

The request to compel arbitration also fails on account of a traditional contract defense—unconscionability, on both procedural and substantive grounds. First, Plaintiffs lacked meaningful choice when they were presented with agreements at the time of account sign-up on a take-it-or-leave it basis with references to arbitration buried in fine print while they were seated at a bank computer with a Chase representative waiting for their signature. Second, the agreements contain a plethora of terms antagonistic to consumers, notably barring public injunctive relief and punitive damages and impermissibly shortening the statute of limitation. Thus, to the extent there is an agreement to arbitrate, the arbitration clauses are unconscionable and not enforceable.

In sum, Defendants' request to arbitrate is without merit. The Motion should be denied.

## FACTUAL BACKGROUND

### A. Zelle Fraud Is Rampant and Not Isolated to Plaintiffs.

Zelle is a money payment platform that facilitates peer-to-peer ("P2P") instant transfer services, but unlike other P2P platforms, Zelle is owned by seven of America's largest banks, including Chase. Am. Class Action Compl. ("Complaint" or "AC") ¶ 23, ECF No. 42. Nearly 18 million people were victims of fraud on Zelle in 2020, including many Chase accountholders. *Id.* ¶ 27. Chase and Zelle know fraud is pervasive but failed to take steps to warn prospective and current Chase accountholders and failed to investigate and reimburse harmed consumers. *Id.* ¶¶ 29, 39, 178.

Defendants advertise Zelle as "fast, easy, and convenient," giving consumers the false impression that Zelle is safe as an integrated service within the Chase mobile banking application. *Id.* ¶¶ 51, 59. To the contrary, the Zelle transfer service is a preferred tool for

fraudsters because of its design: funds can be immediately accessed and transferred, and fraudsters need not reveal their true identity to set up an account. *Id*. ¶¶ 31–32, 38. Exploiting these design flaws, fraudsters regularly impersonate bank employees and potential employers to obtain consumers' bank account information. *See id.* ¶¶ 33–35, 116.

**B.     Fraud on the Zelle Transfer Service Harmed Plaintiffs.**

Plaintiffs Bennett-Morales and Curtis both opened checking accounts with Chase in 2019, on April 25, 2019, in Carlsbad, California and on October 7, 2019, in North Baldwin, New York, respectively. Declaration of Miranda Jane Bennett-Morales ("Bennett-Morales Decl.") ¶ 1; Declaration of Keanna Curtis ("Curtis Decl.") ¶ 1 (both filed concurrently herewith).

Plaintiff Bennett-Morales was the victim of a bank impersonator who accessed her Chase account and moved $450 out of her account via the Zelle transfer service. AC ¶¶ 116–19. Within minutes, she called Chase to stop the "pending" transaction, but Chase refused. *Id*. ¶ 123. Neither Defendant adequately investigated her claim, and both failed to reimburse her. *Id*. ¶¶ 125–26, 132, 136, 173, 175.

Plaintiff Curtis is a young college student who was searching for a new job to accommodate her school schedule and also became the victim of a fraudster. On April 20, 2022, the fraudster posed as a prospective employer and fraudulently induced a transfer of $1,900 via Zelle from her account. *Id*. ¶¶ 95, 101, 113. She reported the incident to Chase and Zelle and was summarily told by both there was nothing to be done. *Id*. ¶¶ 105–13.

**C.     Plaintiffs Opened Chase Accounts in 2019 Without Agreeing to Arbitrate Claims.**

At no time did either Plaintiff intend to agree to arbitrate claims possibly relating to their Chase accounts. Bennett-Morales Decl. ¶ 6; Curtis Decl. ¶ 6. Defendants maintain Plaintiffs agreed to arbitration under a series of agreements, beginning with the 2019 DAA. As to Plaintiff Bennett-Morales, dates proffered for her supposed "agreement" to agreements are:

**April 25, 2019**: account opened with 2019 DAA (ECF No. 50 ¶ 3; ECF No. 50-1 at 5–8);

**May 21, 2019**: 2019 Digital Services Agreement ("2019 DSA") (ECF No. 48 ¶ 21; ECF No. 48-9;

**January 31, 2023**: Plaintiff Bennett-Morales defrauded on Zelle (AC ¶ 116);

**February 15, 2023**: 2022 Zelle Services Agreement ("2022 ZSA") (ECF No. 48 ¶ 26; ECF No. 48-8)

As to Plaintiff Curtis, the dates Defendants provided for her alleged agreement is:

**October 7, 2019**: account opened with 2019 DAA (ECF No. 49 ¶ 3; ECF No. 49-1 at pp. 5–8);

**October 16, 2019**: 2019 Chase QuickPay and J.P. Morgan QuickPay Agreement ("2019 QuickPay Agreement") (ECF No. 48 ¶ 12; ECF No. 48-6);

**November 18, 2019**: 2019 DSA (ECF No. 48 ¶ 4; ECF No. 48-1);

**April 20–22, 2022**: Plaintiff Curtis defrauded on Zelle (AC ¶¶ 95–103);

**December 30, 2022**: 2022 Digital Services Agreement ("2022 DSA") (ECF No. 48 ¶ 9; ECF No. 48-3)

1.     **Defendants Fail to Show Assent to the 2019 Deposit Account Agreement.**

Defendants go to great lengths to demonstrate what other consumers would have seen when opening an account in 2019. But Defendants fail to show what either Plaintiff actually saw in 2019 when they opened their accounts. *See generally* ECF No. 49-2. Both Plaintiffs "*would have* needed to complete the "Click to Sign" process to open their new account[,]" and "[t]his necessarily *would have* required the new customer to agree to the terms of the DAA governing that new account[.]" ECF No. 49 ¶ 11 (emphasis added); ECF No. 50 ¶ 10 (same). And notably, as to the arbitration provision specifically, nowhere do Defendants provide any screenshot of what Plaintiffs *would have* seen, or closer to their burden, what Plaintiffs *actually saw*. *See generally* ECF No. 49-2.

Defendants maintain that Plaintiffs completed the "Click to Sign" process, which is "confirm[ed]" by the issuance of a Personal Electronic Signature Card. ECF No. 49 ¶ 12; ECF No. 50 ¶ 11. By issuing a Signature Card, Chase says, Plaintiffs "acknowledge[d] ***receipt*** of the Bank's Deposit Account Agreement [the 2019 DAA]" and their agreement to be bound by it. ECF No. 49-1 at p. 2 (emphasis added); ECF No. 50-1 at 2 (same). Critically, the Signature Card describes the 2019 DAA as "includ[ing] ***all provisions that apply*** to this deposit account."[2] ECF No. 49-1 at 2 (emphasis added); ECF No. 50-1 at 2 (same). But Defendants filed just 4 of 21 pages of this document, ECF No. 49-1 at 5–8, ECF No. 50-1 at 5–8, and the documents make no mention of Zelle or electronic fund transfers generally. *See id.* Even from these limited pages, it is known that the 2019 DAA barred public injunctive relief. ECF No. 49-1 at 8.

### 2. Chase Fails to Meet Its Burden to Show Assent to Any Other Agreement.

Though the 2019 DAA contained "all provisions that apply" to Plaintiffs' accounts, particular to Plaintiff Bennett-Morales, Defendants also invoke two other documents, the 2019 DSA and 2022 ZSA. Concerning the 2019 DSA, Chase described a general "Click to *Agree*" process where the 2019 DSA was presented via hyperlink, a departure from the Click to *Sign* required at sign-up. ECF No. 48 ¶ 11; ECF No. 48-4 at 5–6. The "Click to Agree" for the 2019 DSA did not require scrolling through any pages of the document, nor did it require review of any terms concerning arbitration prior to clicking, "I agree to the Digital Services Agreement." ECF No. 48-5 at pp. 5–6. Concerning the 2022 ZSA, ECF No. 48-8, such is plainly inapplicable because she only agreed to the 2022 ZSA on February 15, 2023, ECF No. 48 ¶ 26, *after* she made claims to both Chase and Zelle. *Id.* ¶ 30; AC ¶¶ 116, 121, 132.

---

[2] Should Defendants rely on the term that the "agree[ment] to be bound by the terms and conditions contained therein [may be] amended from time to time" to justify substantive changes to the 2019 DAA, ECF No. 49-1 at 2; ECF No. 50-1 at 2, such an "agreement to agree" is an illusory contract term. *DCR Mortg. VI Sub I, LLC v. Peoples United Fin., Inc.*, 50 N.Y.S.3d 144, 146 (N.Y. App. Div. 2017).

For Plaintiff Curtis, Defendants' declarations attempt to show "agreement" by Plaintiff Curtis to two other primary documents: the 2019 DSA and the 2019 QuickPay Agreement. ECF No. 48 ¶¶ 4–5, 12. As to the 2019 DSA, ECF No. 48-1, Defendants rely on the same representations to show Plaintiffs' "agreement," so they suffer from the same infirmities. For the 2019 QuickPay Agreement, ECF No. 48-6, Defendants identify two possible processes, but again, the declarations only show what users "*would have* seen" and fail to identify which process applied to Plaintiff Curtis. ECF No. 48 ¶¶ 14, 17 (emphasis added). For later versions of the 2019 QuickPay Agreement, passing reference is made to "enrollment" without even pointing to a date that Plaintiff Curtis agreed to either document. *Id.* ¶ 13, 18. In no instance was the word "arbitration" visible without clicking on a hyperlink, and clicking on the hyperlink was not required. ECF No. 48-5 at 2–3, 5–6.

## ARGUMENT

The purpose of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, is to make "arbitration agreements as enforceable as other contracts, but not more so." *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022) (citation omitted). Courts apply a standard similar to that applicable to a motion for summary judgment, drawing all reasonable inferences in favor of the non-moving party. *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016).

### A.     Choice of Law Analysis Should Be Applied to Plaintiffs.

The choice of law provisions are excluded from Defendants' incomplete filings. *See* ECF Nos. 46–51. The 2022 DAA filed in support of the Letter Brief contains a choice of law provision tied to the law of the state where "your account is located," considering factors including where the account was opened. ECF No. 33-2 at 23. If all other agreements had the same choice of law provision, based on where Plaintiffs opened their account, California law

applies to Plaintiff Bennett-Morales and New York law applies to Plaintiff Curtis. ECF No. 49 at ¶¶ 1, 3; ECF No. 50 at ¶¶ 1, 3. Where state laws diverge, Plaintiffs have so noted below.

## B.    Defendants Fail to Show Plaintiffs Agreed to Binding Arbitration.[3]

A party seeking to compel arbitration must prove the existence of a valid arbitration agreement by a preponderance of the evidence. *Marcus v. Collins*, 2016 WL 8201629, at *8 (S.D.N.Y. Dec. 30, 2016). "Where the moving party fail[s] to produce either a complete or signed document, courts have found that the moving party failed to make out a prima facie showing that an agreement to arbitrate existed." *Ayad v. PLS Check Casher of N.Y., Inc.*, 2021 WL 4756091, at *7 (E.D.N.Y. July 26, 2021), *report and recommendation adopted as modified*, 2021 WL 4272472 (E.D.N.Y. Sept. 21, 2021). Similarly, the moving party fails to meet their evidentiary burden by only offering sample contracts between themselves and non-parties and asking the court to infer that the non-moving party here is similarly bound. *Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685, 694–95 (S.D.N.Y. 2015); *see also Dreyfuss v. eTelecare Glob. Sols.-U.S. Inc.*, 349 F. App'x 551, 552–53 (2d Cir. 2009) (holding moving party failed to make a prima facie showing that an arbitration agreement existed where it produced only the first page of a signature page of the purported arbitration agreement).

Defendants fail to meet their evidentiary burden because they did not include any agreements in their entirety despite filing five declarations (with 16 exhibits). *See* ECF Nos. 46–50. Nor may they do so for the first time in reply brief, as that would violate procedural due process. Under *Dreyfuss*, *Mayfield*, and *Ayad*, this alone warrants dismissing the Motion.

---

[3] The gateway question of whether a valid arbitration agreement *exists* has not been addressed, but the issue must be resolved by this Court, not an arbitrator. *Ohanian v. Apple Inc.*, 2021 WL 871501, at *3 (S.D.N.Y. Mar. 9, 2021) ("[T]he court must resolve that [contract formation] challenge[.]"). *See State v. Wolowitz*, 468 N.Y.S.2d 131, 145 (N.Y. App. Div. 1983) ("The procedural element of unconscionability concerns the contract formation process and the alleged lack of meaningful choice[.]").

But even if the Court considers the scant evidence, Defendants still fall short of their burden. "It is a basic tenet of contract law that, in order to be binding, a contract requires a 'meeting of the minds' and 'a manifestation of mutual assent.'" *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288-89 (2d Cir. 2019) (citation omitted). The manifestation of mutual assent must be "sufficiently definite[,]" *id.* at 289, which is a "case-by-case" consideration. *Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*, 999 F.3d 828, 842 (2d Cir. 2021). Critically, "[c]larity and conspicuousness of *arbitration terms* are important in securing informed assent." *Nicosia*, 834 F.3d at 233 (emphasis added) (citation omitted). *Accord B.D. v. Blizzard Ent., Inc.*, 292 Cal. Rptr. 3d 47, 65 (Cal. Ct. App. 2022) ("As for notice of the arbitration agreement specifically, we further conclude the pop-up provided sufficiently conspicuous notice.").

For web-based contracts, offerees may be bound if they have "inquiry notice of them and assent[] to them through conduct that a reasonable person would understand to constitute assent." *Starke*, 913 F.3d at 289. Courts look at "whether the term was obvious and whether it was called to the offeree's attention," which "often turns on whether the contract terms were presented . . . in a clear and conspicuous way." *Id.*; *Sellers v. JustAnswer LLC*, 289 Cal. Rptr. 3d 1, 27–28 (Cal. Ct. App. 2021) (applying California law to find disclosures failed clear and conspicuous standard). *See also, e.g.*, *Davitashvili v. Grubhub Inc.*, 2023 WL 2537777, at *8 (S.D.N.Y. Mar. 16, 2023) (denying Grubhub's arbitration motion due to failure to provide sufficient evidence that terms of use were presented in a way to put the plaintiffs on inquiry notice). Assessing reasonableness of notice, "is clearly a fact-intensive inquiry." *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 101–02 (S.D.N.Y. 2022) (quoting *Solimon*, 999 F.3d at 835). Here, the terms of Defendants' agreements are neither clear nor conspicuous so as to put consumers like Plaintiffs on inquiry notice about arbitration.

*2019 DAA*—Chase's screenshots of the "Click to Sign" process show snippets of what "would have" appeared to Plaintiffs. ECF No. 49 ¶¶ 10–11; ECF No. 49-2; ECF No. 50 ¶¶ 10–11. Notably absent, however, from the evidence is *any* evidence showing what the *arbitration* provision to the 2019 DAA looked like *as presented* to Plaintiffs. *See* ECF No. 49-2 at 5–6. Instead, Defendants provide the first page of a different agreement from 2021, *id.* at 5, and then separately provide just four pages of the 2019 DAA, ECF No. 49-1 at 5–8. Worse still, the Click to Sign process requires that at some point in the process the Chase banker is given "Authorization . . . to Electronically Sign on Behalf of Customer[,]" ECF No. 49-2 at 2, undermining Defendants' claim that issuance of the Personal Electronic Signature Card "*confirms* that *Ms. Curtis* [and Ms. Bennett-Morales] completed" the process themselves as Defendants describe. *See* ECF No. 49 ¶ 12 (emphasis added); ECF No. 50 ¶ 11 (same).

*2019 DSA*—For Plaintiff Curtis, Defendants rely on evidence of a "substantially similar [screen] view" that she "would have had" when agreeing to the 2019 DSA several weeks after opening her Chase account. ECF No. 48 ¶ 11 (citing ECF No. 48-4). Both Plaintiffs opened Chase accounts in 2019, but the process described for Plaintiff Bennett-Morales differed from that of Plaintiff Curtis, *id.* ¶ 21, with no screenshots incorporated and a statement that Plaintiff Bennett-Morales "would have been provided electronic access [ ] by hyperlink." *Compare id.* ¶¶ 4–11, *with id.* ¶¶ 21–25. Even if, *arguendo*, the screenshots applied to both Plaintiffs, the word "arbitration" is absent. If the user was generally aware of an agreement, nothing notified them of arbitration. *But see Nicosia*, 834 F.3d at 233; *Blizzard Ent.*, 292 Cal. Rptr. 3d at 65.

*2021 DSA and 2022 DSA*—For Plaintiff Bennett-Morales, Defendants state only that "Chase has updated the DSA from time to time . . . and would have made these updates available to customers like Ms. Bennett-Morales." ECF No. 48 ¶ 22. For Plaintiff Curtis, Defendants point

to "records" that she "agreed" to subsequent DSAs but present no evidence or any visible representation of the agreement process or how arbitration terms were presented. *Id.* ¶¶ 8–10.

*2019 QuickPay Agreement, 2021 ZSA, 2022 ZSA*—Defendants again rely on a showing of what Plaintiffs "would have seen" and visual depictions of the sign-up process for Chase QuickPay, later known as Zelle. *Id.* ¶¶ 14, 28. Yet again, the word "arbitration" does not appear in any of the depictions, and the agreements were available only by hyperlink. ECF No. 48-5. In 2019, no user was required to confirm their review of the agreement. *Id.* at 2–3, 5–6 ("I have read and agree to the Chase QuickPay [sic]"). Defendants' evidentiary showing of assent to these agreements fails for the same reasons as the DSAs.

Notwithstanding the raft of declarations and exhibits to the Motion, Defendants provided limited information about the circumstances of Plaintiffs' agreement(s), none of which demonstrate an agreement to arbitrate. For agreements where Defendants submitted evidence of what "would have" occurred, none of the arbitration terms are clear and conspicuous.

**C.      Even if Formed, the Arbitration Agreements are Unconscionable.**

Even if an arbitration agreement was formed, it is unenforceable because it is unconscionable. Unconscionability is a general contract defense that renders an arbitration agreement unenforceable under the FAA. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); 9 U.S.C. § 2.

A contract is unconscionable when it "is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place[.]" *Gillman v. Chase Manhattan Bank, N.A.*, 534 N.E.2d 824, 828 (N.Y. 1988) (citation omitted). A party must establish a contract is both procedurally and substantively unconscionable by showing there is "absence of meaningful choice" and that the contract terms unreasonably favor the other party. *Id*. (citations omitted). These factors are flexible and fact specific. *State v. Avco Fin. Serv. Of*

*N.Y. Inc.*, 406 N.E.2d 1075, 1078 (N.Y. 1980). California courts apply a "sliding scale," so that the more substantively oppressive the term, the less evidence of procedural unconscionability is required to show unenforceability, or vice versa. *Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976, 981–82 (9th Cir. 2007) (citation omitted).

Here, even the non-operative[4] complete agreements Chase submitted in its letter brief are unconscionable and therefore not enforceable.

### 1. The Agreements are Procedurally Unconscionable Because Consumers Lack Meaningful Choice.

Procedural unconscionability looks at the contract formation process and a lack of a meaningful choice. *Gillman*, 534 N.E.2d at 828. *See also Parada v. Superior Court*, 98 Cal. Rptr. 3d 743, 759 (Cal. Ct. App. 2009) (substantive unconscionability shown where contract falls outside the nondrafting party's reasonable expectations). Factors relevant to this inquiry are disparity in bargaining power, the experience and education of the parties, the use of deceptive or high-pressure tactics, and the use of fine print in the contract. *Id.* While disparate bargaining power alone is insufficient, such disparity coupled with not providing a consumer with sufficient time to read the agreement and not permitting the consumer to review the agreement with an attorney are sufficient to show unconscionability. *See Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 572 (S.D.N.Y. 2009).

Here, Plaintiffs lacked any meaningful choice. First, there is an obvious disparity in bargaining power between Chase and consumer Plaintiffs, with agreements presented on a take-it-or-leave-it basis. Second, Chase's agreements bury any references to arbitration. None

---

[4] Defendants' attached agreements to the letter brief were not the operative versions of the documents at the time Plaintiffs opened their account. *Compare* ECF Nos. 49 ¶ 3, 49-1 at pp. 5–8, 50 ¶ 3, 50-1 at 5–8, *with* ECF Nos. 33, 33-1, 33-2, 33-3, 33-4, 33-5, and 33-6. The failure to provide complete agreements in the Motion makes it impossible to determine if there are other unconscionable terms omitted from the filings.

included any notice in the first few pages about an arbitration clause and the various rights consumers must waive. *See Am. Family Life Assurance Co. of N.Y. v. Baker*, 778 F. App'x. 24, 27 (2d Cir. 2019) (contract was not deceptive for using fine print where signature line included all-capital type warning that contract contains an arbitration clause). Third, the "Click to Sign" process requires Chase consumers to purportedly assent to an account agreement in a Chase bank, on a Chase computer, with a Chase representative next to them. *See* ECF No. 49 ¶¶ 4, 6; ECF No. 50 ¶¶ 3, 5–6. Nothing in Chase's sign-up process informs consumers they have an option to review the DAA at home or with an attorney. *See Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377, 383 (S.D.N.Y. 2002) (finding procedural unconscionability, in part, because employees were given limited time to review a 16-page document and were never told they could review the agreement at home or with an attorney).

Together, these factors show Chase's sign-up process is procedurally unconscionable.

**2.    The Agreements Are Substantively Unconscionable Because They Waive Statutory Rights Intended for Public Benefit.**

Substantive unconscionability looks to whether contract terms unreasonably favor one party over another. *Gillman*, 534 N.E.2d at 829. Here, Chase's agreements unreasonably favor Chase in at least four ways. The agreements: (1) impermissibly waive Plaintiffs' right to public injunctive relief; (2) impermissibly waive Plaintiffs' right to seek punitive damages; (3) impermissibly shorten the statute of limitations; and (4) give Chase a unilateral right to modify.

First, the agreements all impermissibly waive consumers' right to public injunctive relief. In *McGill v. Citibank, N.A.*, 393 P.3d 85 (Cal. 2017), the California Supreme Court held individuals cannot waive their right to seek a statutory right to a public injunction. *Id.* at 95. The underlying rationale for the *McGill* rule is that "a law established for a public reason cannot be contravened by private agreement." *Id.* at 96 (citation omitted).

Similarly, under New York law, statutory rights affecting the public interest may not be waived by private agreement. *Estro Chem. Co. v. Falk*, 100 N.E.2d 146, 148 (N.Y. 1951). Like California, New York General Business Law §§ 349, 350, provide a right to injunctive relief that is public. The purpose of both statutes is to protect the consuming public at large. "As shown by its language . . . section 349 is directed at wrongs against the consuming public." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E. 2d 741, 744 (N.Y. 1995); *McDonald v. N. Shore Yacht Sales, Inc.*, 513 N.Y.S.2d 590, 595 (N.Y. Sup. Ct. 1987) (explaining under § 350, the Legislature was concerned with "irreparable injury to the public at large"). Also, to bring a § 349 claim, a plaintiff must show "the acts or practices have a broader impact on consumers at large." *Oswego*, 647 N.E. 2d at 744. Finally, injunctive relief is public, not private, when it seeks to eliminate deceptive practices like false advertising. *See In re Stubhub Refund Litig.*, 2021 WL 5447006, at *11 (N.D. Cal. Nov. 22, 2021).

Plaintiffs seek public injunctive relief to change how Defendants advertise the Zelle service, including warning consumers of the risks of fraud when using Zelle. *See* AC at p. 46. This is "paradigmatic" public injunctive relief, having both the purpose *and* effect of benefitting the public. Yet every iteration of Chase's agreement prevents consumers from seeking public injunctive relief, which violates public policy and is unconscionable. *See, e.g.*, ECF No. 48-3 at p. 9 ("YOU AND WE AGREE NOT TO . . . SEEK . . . PUBLIC INJUNCTIVE RELIEF).[5]

Second, the agreements waive Plaintiffs' substantive statutory rights to punitive damages. By agreeing to arbitrate statutory claims, a party does not forgo their substantive statutory rights but rather submits to resolving any dispute in an arbitral forum instead of a court. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985); *Gilmer v.*

---

[5] *See also* ECF No. 33-2 at p. 27 (same).

*Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991). Here, Plaintiffs seek to vindicate their

statutory rights by seeking treble damages, which are available under the Electronic Fund

Transfer Act ("EFTA"), 15 U.S.C. § 1693f(e)(2). *See* AC at p. 46. The current DSA states Chase

is not liable for any punitive damages, including under the EFTA and Regulation E, which

waives Plaintiffs' right to treble damages, a substantive right the waiver of which is

unconscionable. *See* ECF No. 33-3 at 86.[6]

      Third, Chase's agreements impermissibly shorten the statute of limitations. While

contracting parties may agree to shorten the period when a party may bring an action, the period

cannot be unreasonably short. *Hurlbut v. Christiano*, 405 N.Y.S.2d 871, 873 (N.Y. App. Div.

1978). Contracts limiting the right to sue to a period shorter than the statute of limitations "are

not looked upon with favor" because they derogate statutory limitations. *Id.* Thus, such

contractual limitations should be construed "with strictness against the party invoking them." *Id.*

(citation omitted). Additionally, a term shortening the period to bring an action is not enforceable

in a contract of adhesion. *Timberline Elec. Supply Corp. v. Ins. Co. of N. Am.*, 421 N.Y.S.2d 987,

988 (N.Y. App. Div. 1979). Here, all iterations of the DAA and DSA are contracts of adhesion.[7]

The DAA attempts to limit Plaintiffs' right to sue to two years, which is substantially less than

the three-year statute of limitations for a § 349 claim. *See* ECF No. 46-1 at 5 ECF No. 46-3 at 7.

      Fourth, all of the agreements give Chase a unilateral right to modify the contract. *See*

ECF Nos. 33-3 at 102; 48-6 at 2; 48-7 at 3; 48-8 at 3; 48-9 at 4. Unilateral modification clauses

---

[6] Chase omitted this provision in its submitted materials, as demonstrated by the fact that the "Failure to Perform" clause appears in the table of contents. ECF No. 48-3 at 5.

[7] Chase drafted both agreements; Chase has superior bargaining power; and presented Plaintiffs with both agreements on a take-it-or-leave-it basis. *See Klos v. Lotnicze*, 133 F.3d 164, 168 (2d Cir. 1997) (contracts of adhesion are "standard-form contracts offered by large, economically powerful corporations . . . on a take-it-or-leave-it basis, with no opportunity to change the contract's terms.") (citation omitted).

are unconscionable because they give one party the power to bind another party to a contract they may have never seen. *Brennan*, 198 F. Supp. 2d at 384.

Together, these factors unreasonably tilt the scales in Chase's favor at Plaintiffs' expense, making both the DAA and DSA substantively unconscionable and consequently unenforceable.

**D.      The FAA Does Not Apply Because Fraud by Third Parties Does Not "Arise Out of" the Agreements.**

The FAA applies only to controversies "arising out of such a contract or transaction," 9 U.S.C. § 2, meaning controversies "with a sufficiently close 'relationship' to the underlying contract." *Calderon v. Sixt Rent a Car, LLC*, 5 F.4th 1204, 1213–14 (11th Cir. 2021) (citation omitted). "[T]he term 'arising out of' is 'broad, but it is not all encompassing.'" *Id*. at 1212.

For two reasons, the controversies do not "arise out of" the agreements, and the FAA is inapt. First, the agreements only apply to "*your* use" of the Chase mobile application or website or Zelle "service," *see, e.g.*, ECF No. 48-6 at 2 ("your use" of the "Chase QuickPay with Zelle Service"), but the Zelle transactions were initiated or fraudulently induced by third-party fraudsters, not Chase accountholders. Plaintiffs' claims concerning fraud induced by third parties' use of the Zelle payment service fall outside the scope of and cannot fairly be said to "arise out of" the agreements. Second, the 2019 DAA, 2019 DSA, and 2021 DSA, fail even to mention Zelle. *See generally*, ECF Nos. 48-1; 48-2; 49-1 at 5–8; 50-1 at 5–8. The Zelle transactions therefore do not "arise out of" these three agreements.

**E.      Zelle Cannot Enforce Chase's Agreements as a Third-Party.**

"[N]onsignatories are generally not subject to arbitration agreements." *Belzberg v. Verus Invs. Holdings Inc.*, 999 N.E.2d 1130, 1133 (N.Y. 2013). A non-signatory may only compel arbitration where traditional state law principles render an arbitration provision enforceable at the non-signor's behest. *See Tuchman v. UBS Fin. Servs. Inc.*, 2020 WL 13561713, at *7 (S.D.N.Y.

Nov. 9, 2020). Here, Zelle invokes (i) the third-party beneficiary theory and (ii) equitable estoppel to compel arbitration against both Plaintiffs, but neither equitable applies.

### 1.    Zelle Fails to Establish Itself as a Third-Party Beneficiary.

A non-signatory may enforce an arbitration agreement if it is a third-party beneficiary. *See Republic of Iraq v. ABB AG*, 769 F. Supp. 2d 605, 612 (S.D.N.Y. 2010). "A third-party beneficiary exists 'only if the parties to that contract intended to confer a benefit on him when contracting; it is not enough that some benefit incidental to the performance of the contract may accrue.'" *Borsack v. Chalk & Vermilion Fine Arts, Ltd.*, 974 F. Supp. 293, 300 (S.D.N.Y. 1997) (quoting *McPheeters v. McGinns, Smith & Co.*, 953 F.2d 771, 773 (2d Cir. 1992)). Critically, what is dispositive is whether the non-signatory is the intended beneficiary of the arbitration provision. *See Warner v. U.S. Sec. & Futures Corp.*, 685 N.Y.S.2d 25, 26 (N.Y. App. Div. 1999) (non-signatory could not compel arbitration even though contract deemed it a third-party beneficiary but not obvious that third-party beneficiary clause modified the arbitration clause).

Here, Zelle cannot establish itself as a third-party beneficiary as to either Plaintiff, though for differing reasons. Effective on November 3, 2022, Zelle was given the right to enforce the arbitration provision. ECF No. 48-8 at 2, 9. However, as to Plaintiff Curtis, this version of the 2022 ZSA was not in effect during April of 2022 when the transactions occurred. AC ¶¶ 95–104. Instead, the 2021 ZSA was in effect, but it does not name Zelle as a party to which "binding arbitration applies" and fails to connect Zelle to arbitration in any way. *Compare* ECF No. 48-7 at p. 8, *with* ECF No. 48-8 at 9 ("Zelle . . . [is] entitled to enforce this arbitration provision against you"). As to Plaintiff Bennett-Morales, while the effective date of the 2022 ZSA preceded the harm to her on January 31, 2023, AC ¶ 116, per Defendants she "agreed" to the 2022 ZSA *after* the Zelle transactions, on February 15, 2023. ECF No. 48 ¶ 30. Any

agreement—if it were actually established—followed the injury, barring its enforceability here. Zelle is not an intended third-party beneficiary of the agreements for either Plaintiff.

### 2. Equitable Estoppel Presents No Bar to Plaintiffs' Claims Against Zelle.

A non-signatory attempting to compel arbitration under an estoppel theory must demonstrate: "(1) the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed, and (2) the relationship among the parties . . . justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped." *Medidata Sols., Inc. v. Veeva Sys. Inc.*, 748 F. App'x 363, 366 (2d Cir. 2018).

Under the first prong, "[c]laims are intertwined where the merits of an issue between the parties [i]s bound up with a contract binding one party and containing an arbitration clause." *Denney v. Jenkins & Gilchrist*, 412 F. Supp. 2d 293, 298 (S.D.N.Y. 2005) (second alteration in original) (citation omitted). "The plaintiff's *actual dependence* on the underlying contract in making out the claim against the nonsignatory defendant is therefore always the sine qua non of an appropriate situation for applying equitable estoppel." *Id.* (citation omitted). Here, Zelle, as a non-signatory, fails to show any claims against Zelle are intertwined with any arbitration agreement. There is not "actual dependence" or reliance on any agreement for any claims against Zelle. To the extent any agreements are integral to any of Plaintiffs' claims, it is as to the contract claim at best, which is asserted against Chase *only*. ECF No. 42 ¶ 187. *See also id.* ¶¶ 80–91, 189, 194, 195.[8] Defendants use conclusory language and cite to the Complaint, at most pointing to places where "Zelle" appears, which in no way gives rise to a claim against Zelle. *See* ECF No. 51 at 18 (citing AC ¶¶ 85, 95–103, 114–38). There is no showing that any claims against Zelle are intertwined with any agreement introduced by Defendants.

---

[8] To the extent Zelle is mentioned, this only shows its absence from the relevant agreements. *See, e.g.*, ECF No. 42 ¶ 86 ("Accordingly, none of the Agreements and no correspondence … informs consumers of Zelle's obligation[.]").

Under the second prong, the relationship among the parties, this requires something more than a "relationship of any kind" between the litigating parties and a dispute dealing with the subject matter of an arbitration contract made by one of them. *Republic of Iraq*, 769 F. Supp. 2d at 611. It does not suffice that "their dispute deals with the subject matter of an arbitration contract made by one of them." *Ross v. Am. Express Co.*, 547 F.3d 137, 144 (2d Cir. 2008) (quoting *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 359 (2d Cir. 2008)). Here, Zelle fails to show a sufficiently close relationship with Chase sufficient to warrant equitable estoppel. In fact, Zelle has refused to disclose the nature of its ownership structure and there is nothing known about whether Zelle or Chase is tasked with performing duties on behalf of the other. Nor are Zelle's claims about its (lack of) obligations to consumers addressed anywhere in the agreements applicable to Plaintiffs. Indeed, Zelle has taken the position it has no such obligation. ECF No. 35 at 2. Zelle's attempt to evade liability under either equitable theory fails.

**F.      Plaintiffs' Contract Claim Has No Bearing on the Merits of the Motion.**

Courts routinely acknowledge the existence of contract claims while also addressing the threshold issue of arbitrability. *See, e.g.*, *Ji Dong Cheng v. HSBC Bank USA, N.A.*, 467 F. Supp. 3d 46, 49 (E.D.N.Y. 2020). Any merits argument about the contract claim should be addressed *after* the Court addresses arbitrability, particularly because Plaintiffs pleaded the contract claim against Chase only and did so in the alternative. *See* AC ¶¶ 189–210.

**CONCLUSION**

For the aforementioned reasons, the Motion should be denied.

DATED: April 7, 2023                    Respectfully Submitted,

By /s/ *Nathan L. Nanfelt*

Derek W. Loeser, NY Bar # 5543640
Laura R. Gerber (admitted *pro hac vice*)
Nathan Nanfelt (admitted *pro hac vice*)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, Washington 98101
Telephone: (206) 623-1900
dloeser@kellerrohrback.com
lgerber@kellerrohrback.com
nnanfelt@kellerrohrback.com

Abbas Kazerounian, Esq. (NY Bar # 5590104)
KAZEROUNI LAW GROUP, APC
48 Wall Street, Suite 1100
New York, NY 10005
Telephone: (800) 400-6808
ak@kazlg.com

Jason A. Ibey, Esq. (admitted *pro hac vice*)
KAZEROUNI LAW GROUP, APC
321 N Mall Drive, Suite R108
St. George, Utah 84790
Telephone: (800) 400-6808
jason@kazlg.com

***Attorneys for Plaintiffs***