UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X
                                                     :

KEANNA CURTIS, et al.,                   :           22 Civ. 10286 (LGS)
                                                      :
                            Plaintiffs,   :       **OPINION AND ORDER**
                                                      :

                          -against-          :
                                                          :

JPMORGAN CHASE BANK, N.A., et al.,    :
                                    Defendants.   :
-------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

       Plaintiffs Keanna Curtis and Miranda Jane Bennett-Morales bring claims on behalf of a putative class, alleging violations of the Electronic Fund Transfer Act and New York General Business Law, breach of contract (including breach of the covenant of good faith and fair dealing), unjust enrichment and negligence.  Defendants JPMorgan Chase Bank ("Chase") and Early Warning Services ("Zelle") move to compel arbitration of all claims.  For the reasons below, Defendants' motion is granted.

## I.    BACKGROUND

       The following facts are taken from the Amended Complaint (the "Complaint") and the parties' evidentiary submissions in connection with Defendants' motion.  *See Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 101 (2d Cir. 2022) ("Court[s] deciding motions to compel arbitration . . . consider[] all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits.").[1]  All reasonable inferences are drawn in favor of Plaintiffs as the non-moving parties.  *See id.*

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, emphases, footnotes and citations are omitted.

Chase is a nationally chartered bank with its principal place of business in New York City.  Zelle is a money payment platform that facilitates peer-to-peer instant payment services. The Complaint alleges that Chase failed to refund Plaintiff Curtis for funds she mistakenly sent via Zelle from her Chase account to scammers and failed to refund Plaintiff Bennett-Morales for funds that third parties sent via Zelle from her Chase account without her authorization.

**A.      The DAA**

Curtis and Bennett-Morales opened their Chase accounts on October 7, 2019, and April 25, 2019, respectively.  Curtis did so in New York, and Bennett-Morales did so in California.

Both Plaintiffs opened their accounts in person, which required completion of a "Click to Sign" process to create their accounts.  This process required Plaintiffs to scroll through, and acknowledge the terms of, the Deposit Account Agreement ("DAA") by clicking an "Acknowledge" button.  They also electronically clicked to sign personal electronic signature cards, which include language "acknowledg[ing] receipt of the [DAA] . . . and agree[ing] to be bound by the terms and conditions contained therein as amended from time to time."

The DAA each Plaintiff signed states that "any dispute relating in any way to your account or transactions will be resolved by binding arbitration . . . and not through litigation in any court (except for matters in small claims court)."  The DAA continues:

> You have a right to opt out of this agreement to arbitrate, as discussed below.  Unless you opt out of arbitration, you and we are waiving the right to have our dispute heard before a judge or jury, or otherwise to be decided by a court or government tribunal.  You and we also waive any ability to assert or participate in a class or representative basis in court or in arbitration.  All disputes, except as stated below, must be resolved by binding arbitration when either you or we request it.

(Capitalization of entire quotation removed).  The agreement further states, "Claims or disputes . . . about your deposit account, transactions involving your deposit account, safe deposit box, and any related service with us are subject to arbitration.  Any claims or disputes arising from or

relating to this agreement . . . are also included."  Chase allows account holders to opt-out of the DAA by notifying the bank or calling a toll-free number.  Neither Plaintiff did so.

### B.     The DSA

Both Curtis and Bennett-Morales enrolled in online banking services soon after opening their accounts.  To do so, they agreed to Chase's Digital Service Agreement ("DSA") on November 18, 2019, and May 21, 2019, respectively.  As part of the enrollment process, account holders are provided a hyperlink to the DSA for review.  The versions of the DSA in effect when Plaintiffs enrolled in online banking services contain the following arbitration provision: "Any dispute relating in any way to this agreement, or your use of the digital platforms and services, will be resolved by binding arbitration as discussed below, and not through litigation in any court (except for matters in small claims court)."  (Capitalization of entire quotation removed).  This provision applies to "any and all such Claims, whether they arose in the past, may currently exist or may arise in the future."  To enroll in the DSA, account holders are required to click boxes acknowledging they have read and accepted the conditions of the DSA.

### C.     The Zelle Agreement

Curtis and Bennett-Morales enrolled in Zelle, a digital payment network, on October 16, 2019, and February 15, 2023, respectively.  As part of their enrollment, Chase provided them with electronic access to the Chase QuickPay and J.P. Morgan QuickPay Agreement, subsequently renamed the Zelle® Service Agreement ("Zelle Agreement"), for review by hyperlink.   The enrollment process required each Plaintiff to click boxes acknowledging that they had read and accepted the Zelle Agreement.

The Zelle Agreement is between the customer and Chase.  The versions of the Zelle Agreement in effect when Plaintiffs enrolled both state, "You hereby agree that any dispute,

claim or controversy arising now or in the future under or relating in any way to this agreement, or to the service . . . , regardless of the nature of the cause(s) of action asserted . . . shall be resolved by binding arbitration."  (Capitalization of entire quotation removed).  The Zelle Agreement in effect when Plaintiff Bennett-Morales enrolled also states that, "for any claims or disputes you assert against Zelle[] and Early Warning Services, LLC, Zelle[] and Early Warning Services, LLC are entitled to enforce this arbitration against you."

## II.    STANDARD

The Federal Arbitration Act "embodies a national policy favoring arbitration founded upon a desire to preserve the parties' ability to agree to arbitrate, rather than litigate, their disputes."  *Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 250 (2d Cir. 2019); *accord Micheli & Shel, LLC v. Grubhub Inc.*, 588 Supp. 3d 483, 489 (S.D.N.Y. 2022).  Courts consider two factors when deciding whether a dispute is arbitrable: "(1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that agreement encompasses the claims at issue." *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 179 (2d Cir. 2021).  Because arbitration is a matter of contract between the parties, the "threshold question of whether the parties indeed agreed to arbitrate is determined by state contract law principles."  *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016); *accord Sanchez v. Clipper Realty, Inc.*, No. 22 Civ. 2917, 2023 WL 7272062, at *1 (2d Cir. Nov. 3, 2023) (summary order).

## III.   DISCUSSION

### A.    Validity of the Agreements

#### 1.    Assent to Agreement

As a threshold matter, Plaintiffs argue a choice of law analysis is needed for the three contracts.  Although the DAA, DSA and Zelle Agreement contain choice of law provisions,

these provisions do not apply until it is clear the parties agreed to be bound by these agreements. *See Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012) ("Applying the choice-of-law clause to resolve the contract formation issue would presume the applicability of a provision before its adoption by the parties has been established."); *accord Flores v. Chime Fin., Inc.*, No. 21 Civ. 4735, 2022 WL 873252, at *9 (S.D.N.Y. Mar. 23, 2022). Curtis and Bennett-Morales opened their accounts in New York and California respectively. In their briefing, the parties cite New York and California law. "New York and California apply substantially similar rules for determining whether the parties have mutually assented to a contract term." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017). This makes a choice-of-law analysis unnecessary. *See Schnabel*, 697 F.3d at 119 (finding it unnecessary in the context of a motion to compel arbitration to decide the "typically thorny choice-of-law question, because [the two states whose law could have applied] apply substantially similar rules for determining whether the parties have mutually assented to a contract term").

The arbitration agreements are enforceable because Plaintiffs had inquiry notice of the agreements' terms. "Where an offeree does not have actual notice of certain contract terms, he is nevertheless bound by such terms if he is on inquiry notice of them and assents to them through conduct that a reasonable person would understand to constitute assent." *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 289 (2d Cir. 2019) (New York law). Offerees are on inquiry notice "where the notice of the arbitration provision was reasonably conspicuous and manifestation of assent [was] unambiguous as a matter of law." *Meyer*, 868 F.3d at 76 (California law); *see also Starke*, 913 F.3d at 289 (New York law).

First, the arbitration provisions in all agreements were reasonably conspicuous. To determine whether a provision is reasonably conspicuous in a web-based contract, courts "look

to the design and content of the relevant interface." *Starke*, 913 F.3d at 289. "[W]hen terms are linked in obscure sections of a webpage that users are unlikely to see, courts will refuse to find constructive notice. By contrast, when terms are linked on an uncluttered interface and temporally and spatially coupled with the mechanism for manifesting assent, and the user does not need to scroll beyond what is immediately visible to find the terms, . . . the interface provided reasonably conspicuous notice of the existence of contractual terms." *Edmundson v. Klarna, Inc.*, 85 F.4th 695, 704 (2d Cir. 2023) (applying Connecticut law after recognizing it to be "substantially similar" to California and New York law). "[C]ourts have consistently found [online agreements that require users to physically scroll through the agreement and click to assent] enforceable because they present the consumer with a realistic opportunity to review the terms of the contract and they require a physical manifestation of assent." *Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454, 465 (S.D.N.Y. 2017) (New York law) (citing *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 398-99 (E.D.N.Y. 2015) (collecting cases)). Where terms of service are available only by hyperlink, "[a]s long as the hyperlinked text was itself reasonably conspicuous . . . a reasonably prudent smartphone user would have constructive notice of the terms." *Meyer*, 868 F.3d at 79; *cf. Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*, 999 F.3d 828, 830-31 (2d Cir. 2021) (New York law) (finding arbitration provision in terms and conditions referenced by printed in-store advertisement not clear and conspicuous because website URL containing terms was "buried . . . in a paragraph that was printed in significantly smaller font relative to the other text," "surrounded by a substantial amount of unrelated information" and "did not state that a consumer would be agreeing to those terms . . . nor did it otherwise direct the consumer to such terms"); *cf. Lipsett v. Popular Bank*, No. 22 Civ. 3193, 2024 WL 111247, at *2 (2d Cir. Jan. 10, 2024) (summary order) (New York law) (finding arbitration provision not clear and conspicuous

because notice provided to plaintiff provided misleading information that "signal[ed] to a reasonable customer" that the arbitration agreement did "not apply to him").  The DAA, DSA and Zelle agreements in place when Plaintiffs opened their accounts were presented to Plaintiffs either through an interface that required users to scroll through the entirety of the agreement before they were able to manifest assent and proceed to the next step of registration, or in a hyperlink temporally and spatially near the button to manifest assent on a page otherwise uncluttered by text.  Within each agreement, including all subsequent versions, a user's attention was drawn to the arbitration provision through a combination of bold headers and capitalized text.  The design and content of the interfaces make the arbitration provisions reasonably conspicuous.

Second, Plaintiffs manifested their assent to the arbitration provisions in each of the agreements.  The DAA is a "clickwrap" agreement, which required Plaintiffs to scroll through the entire DAA and then click an Acknowledge button before continuing to the next step.  "Courts routinely uphold clickwrap agreements for the principal reason that the user has affirmatively assented to the terms of agreement by clicking 'I agree.'"  *Meyer,* 868 F.3d at 75.  District courts in this Circuit have enforced the DAA arbitration provision at issue here.  *See, e.g.*, *KPA Promotion & Awards, Inc. v. JPMorgan Chase & Co.*, No. 20 Civ. 3910, 2021 WL 1317163, at *1-2, *4 (S.D.N.Y. Apr. 8, 2021); *Dill v. JPMorgan Chase Bank, N.A.*, No. 19 Civ. 10947, 2020 WL 4345755, at *2-3, *7-8 (S.D.N.Y. Jul. 29, 2020); *Scott v. JPMorgan Chase & Co.*, No. 13 Civ. 646, 2014 WL 338753, at *2-3, *10-11 (S.D.N.Y. Jan. 30, 2014), *aff'd*, 603 F. App'x 33 (2d Cir. 2015) (summary order).

Plaintiffs also manifested their assent to the arbitration provisions in the DSA and Zelle Agreement.  When enrolling, Defendants provided a hyperlink for Plaintiffs to review these

agreements.  Plaintiffs were required to click a box acknowledging that they agreed to the DSA

before they could obtain access to digital products.  Plaintiffs similarly were required to click a

box acknowledging that they had read and agreed to the Zelle Agreement before they could

obtain access to Zelle.  "A reasonable user would know that by clicking the registration button,

he was agreeing to the terms and conditions accessible via the hyperlink, whether he clicked on

the hyperlink or not."  *Meyer*, 868 F.3d at 79-80.  By affirmatively clicking the

acknowledgement, Plaintiffs manifested their assent to the terms of the DAA, DSA and Zelle

Agreement.

### 2.    Unconscionability

Contrary to Plaintiffs' arguments, the agreements Plaintiffs entered into are not

unconscionable under either New York or California law.[2]  The DSA and Zelle Agreements are

both governed by New York law, according to their terms.  The DAA is governed by New York

law as to Curtis and California law as to Bennett-Morales, according to the DAA's terms.  *See,*

*e.g.*, *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010) (applying New

York law per the parties' agreement to determine unconscionability of an arbitration agreement);

*accord Doe #1 v. Coll. Bd.*, 440 F. Supp. 3d 349, 355 (S.D.N.Y. 2020) (applying New York law

to assess unconscionability of arbitration agreement).

Under New York law, an unconscionable contract is one that "is so grossly unreasonable

or unconscionable in the light of the mores and business practices of the time" that it is

unenforceable according to its literal terms.  *Gillman v. Chase Manhattan Bank, N.A.*, 534

N.E.2d 824, 828 (N.Y. 1988); *accord Glover v. Bob's Disc. Furniture, LLC*, 621 F. Supp. 3d

---

[2] Plaintiffs note in a footnote that the question of whether a valid arbitration agreement exists must be decided by a court, not an arbitrator. Defendants do not argue otherwise.

442, 449 (S.D.N.Y. 2022) (New York law).  This requires a showing that a contract is both procedurally and substantively unconscionable.  *See Gillman*, 534 N.E.2d at 828 (requiring an "absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party"); *accord President Container Grp. II, LLC v. Systec Corp.*, 467 F. Supp. 3d 158, 170 (S.D.N.Y. 2020) (New York law).  Under California law, a contract is unconscionable when it is "overly harsh, unduly oppressive, so one-sided as to shock the conscience, or unfairly one-sided." *Baltazar v. Forever 21, Inc.*, 367 P.3d 6, 11 (Cal. 2016).  As in New York, the California doctrine of unconscionability "has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." *Sanchez v. Valencia Holding Co., LLC*, 353 P.3d 741, 748 (Cal. 2015).  The procedural and substantive elements "are evaluated on a sliding scale." *OTO, LLC v. Kho*, 447 P.3d 680, 725 (Cal. 2019).  "The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement." *Id.* at 726.

Under either New York or California law, the arbitration agreements are not procedurally unconscionable.  As described above, the arbitration clauses appear conspicuously in capital letters, beneath bolded headers.  *See, e.g.*, *Lawrence v. NYC Med. Practice, P.C.*, No. 18 Civ. 8649, 2023 WL 4706126, at *11 (S.D.N.Y. July 21, 2023) (New York law) (finding that clear, capitalized language "significantly militates against" finding procedural unconscionability); *Brower v. Gateway 2000, Inc.*, 676 N.Y.S.2d 569, 573-74 (1st Dep't 1998) (finding no procedural unconscionability when the arbitration clause appeared in the same size print as the rest of the agreement); *Somerset Fine Home Bldg., Inc. v. Simplex Indus., Inc.*, No. 18 Civ.

615834, 2018 WL 6597346, *2 (N.Y. Sup. Ct. Dec. 14, 2018), *aff'd*, 127 N.Y.S.3d 131 (2d Dep't 2020).

While Plaintiffs were offered the agreements on a "take-it-or-leave-it" basis, this is insufficient in itself to render an arbitration agreement procedurally unconscionable. *See Ragone*, 595 F.3d at 122 (stating that "it is plain that this is not sufficient under New York law" to make a contract procedurally unconscionable); *Kho*, 447 P.3d at 690 (stating that an adhesive contract "offered . . . on a take-it-or-leave-it basis" requires further inquiry into "whether circumstances of the contract's formation created . . . oppression or surprise").

Plaintiffs imply that they were pressured by being presented with the account opening agreements while at the bank, on a bank computer and with a bank employee. But being presented with an agreement at the place of the transaction is not *per se* procedurally unconscionable. *See, e.g.*, *Stavinsky v. Prof-2013-S3 Legal Title Tr. by U.S. Bank Nat'l Ass'n, Fay Servicing*, 77 N.Y.S.3d 287, 295 (N.Y. Sup. Ct. 2018) (finding no procedural unconscionability in fast-paced auction without opportunity to negotiate where terms of sale were read out-loud because "[n]othing in the papers indicates that plaintiff, or his agent, was somehow pressured to bid on the property"); *Moore v. T-Mobile USA, Inc.*, No. 10 Civ. 527, 2012 WL 13036858, at *1, *8 (E.D.N.Y. Sept. 28, 2012) (New York law) (finding no procedural unconscionability where party visited cellphone store that required dealer to print out copy of cellular service agreement for customer to sign where "[n]othing in the record suggests that T-Mobile pressured Moore to consent to the arbitration provision"). Nothing here suggests that Plaintiffs were pressured into entering into the agreements. Without more, Plaintiffs have not shown that the agreements are procedurally unconscionable.

Nor are the agreements substantively unconscionable under New York or California law. Plaintiffs argue that various provisions ancillary to the agreement to arbitrate are unconscionable. But these provisions do not affect the validity of the agreement to arbitrate.

Plaintiffs argue that the agreements unreasonably favor Defendants because the agreements (1) impermissibly waive Plaintiffs' right to public injunctive relief, (2) impermissibly waive Plaintiffs' right to seek punitive damages, (3) impermissibly shorten the statute of limitations and (4) give Defendant a unilateral right to modify.  Even if these provisions were unconscionable, an unconscionable provision can be severed from the agreement and the remaining portions upheld if the provision is isolated and does not go to the core of the agreement.  *See Am. Fam. Life Assurance Co. of New York v. Baker*, 848 F. App'x 11, 13 (2d Cir. 2021) (summary order) (New York law) (upholding arbitration agreement because waiver of federal statutory rights could be severed, as it was not an "integrated scheme to contravene public policy"); *Am. Fam. Life Assurance Co. of New York v. Baker*, 778 F. App'x 24, 27-28 (2d Cir. 2019) (summary order) (New York law) (upholding arbitration agreement because confidentiality provision was distinct from enforceability of entire agreement and could be contested in arbitration proceedings); *Ragone* 595 F.3d at 124-25 (stating that the New York Court of Appeals "directs that the appropriate remedy when a court is faced with a plainly unconscionable provision of an arbitration agreement -- one which by itself would actually preclude a plaintiff from pursuing her statutory rights -- is to sever the improper provision of the arbitration agreement, rather than void the entire agreement"); *accord Cobarruviaz v. Maplebear, Inc*., 143 F. Supp. 3d 930, 943 (N.D. Cal. 2015) (California law) (severing unconscionable provisions because contract was not "permeated" with unconscionability and provisions could "easily be grammatically severed without reforming the Agreements"); *cf.*

11

*Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1006 (9th Cir. 2010) (California law) (upholding district court's decision that entire arbitration agreement was unenforceable after finding "the major part of the arbitration provisions substantively unconscionable" and that "unconscionability permeated the entire arbitration agreement," because "sever[ing] the offending provisions would have left almost nothing to the arbitration clause"). The provisions Plaintiffs criticize as unconscionable are not integral to the arbitration agreements and could be stricken by the arbitrator if they applied to Plaintiffs and were found unenforceable. The ancillary provisions do not render the agreement to arbitrate itself unenforceable.

### B.    Scope of the Agreement

Plaintiffs' claims fall within the scope of the arbitration provisions. A court should "apply state-law principles of contract interpretation" when examining the parties' written agreements for evidence of whether the contracting parties intended an issue to be determined by the arbitrator. *Bechtel do Brasil Construções Ltda. v. UEG Araucária Ltda.*, 638 F.3d 150, 154 (2d Cir. 2011). The court also must be "guided by the federal substantive law of arbitrability created by the Federal Arbitration Act" in applying those principles, which requires that the court "construe the parties' intentions generously in favor of arbitrability" and resolve "any ambiguity in the contract. . . in favor of arbitration." *Id.*

The versions of the DAA in effect when Plaintiffs enrolled state that "any dispute relating in any way to your account or transactions will be resolved by binding arbitration . . . and not through litigation in any court (except for matters in small claims court)," and all other versions are substantially the same. The DSA and Zelle Agreement contain substantially similar language. The versions of the DSA in effect when Plaintiffs enrolled state that "[c]laims are

subject to arbitration, regardless of what theory they are based on or whether they seek legal or equitable remedies" and defines "claim" as "any dispute, claim or controversy arising now or in the future under or relating in any way to this Agreement, the Digital Platforms or the Services." All other versions of the DSA are substantially similar.  The versions of the Zelle Agreement state that arbitration will resolve "any dispute, claim or controversy arising now or in the future under or relating in any way to this agreement, or to the service . . ., regardless of the nature of the cause(s) of action asserted (including claims for injunctive, declaratory, or equitable relief)." (Capitalization of entire quotation removed).

By their unambiguous terms, the arbitration clauses encompass Plaintiffs' claims. Plaintiffs allege that Defendants failed to refund them for losses incurred when unauthorized Zelle payments were made from Plaintiffs' Chase accounts.  These claims unambiguously relate to "[Plaintiffs'] account[s] or transaction[s]."  *See Collins & Aikman Prod. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 21 (2d Cir. 1995) (ruling arbitration is appropriate where "the claims touch matters covered by the parties' . . . agreement"); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) (applying "federal substantive law" to questions of arbitrability and asserting that "doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.").  Plaintiffs' interpretation to the contrary is strained and unconvincing.

### C.    Zelle's Right to Compel Arbitration

Plaintiffs argue that Zelle cannot enforce the arbitration agreements between Plaintiffs and Chase and that claims against Zelle should be litigated in court.  This argument fails for two independent reasons -- Zelle is a third-party beneficiary to the Zelle Agreement between Chase and Plaintiffs, and Plaintiffs are equitably estopped from refusing to arbitrate the entirety of their

dispute with Chase and Zelle.  The Zelle Agreement is governed by New York law pursuant to its choice-of-law provision.

Zelle is an intended third-party beneficiary of the arbitration clause in the Zelle Agreement.  The November 3, 2022, version explicitly states that Zelle is "entitled to enforce this arbitration provision against [the account owners such as Plaintiffs]."  The earlier versions of the Agreement also expressly make Zelle an intended third-party beneficiary, though not by name.  They state, "This binding arbitration provision applies to any and all Claims that you have against us, our parent, subsidiaries, affiliates, licensees . . . ."  According to the Complaint, Zelle is a subsidiary or affiliate of Chase; it is "a money payment platform . . . owned by seven of America's largest banks, which includes Defendant Chase Bank."  Under New York law, Zelle is entitled to enforce the arbitration agreement as a third-party beneficiary.  *See, e.g.*, *Shapiro v. Sankarsingh*, 178 A.D.3d 484, 485 (1st Dept. 2019) (holding that a defendant real estate broker could enforce an arbitration provision as a third-party beneficiary against a plaintiff real estate agent, where the agent agreed with the non-party real estate agency for which agent worked as an independent contractor to be bound by the agency's policy manual, and the manual made clear that commission disputes must be arbitrated); *see also Mandarin Trading Ltd. v. Wildenstein,* 944 N.E.2d 1104, 1110 (N.Y. 2011) (stating requirements to assert rights as a third-party beneficiary, *i.e.*, that the contract between other parties was intended for third-party's benefit and the benefit is sufficiently immediate).

Zelle is entitled to enforce the arbitration provision in the Zelle Agreement for the separate reason that Plaintiffs are equitably estopped from refusing to arbitrate.  "[A] non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute where a careful review of the relationship among the parties, the contracts they

signed . . . , and the issues that had arisen among them discloses that the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." *Ragone,* 595 F.3d at 126-27 (compelling arbitration under an agreement governed by New York law, citing federal law). "[O]ur cases which have applied estoppel against a party seeking to avoid arbitration have tended to share a common feature in that the non-signatory party asserting estoppel has had some sort of *corporate* relationship to a signatory party; that is, this Court has applied estoppel in cases involving subsidiaries, affiliates, agents, and other related business entities." *Doe v. Trump Corp.*, 6 F.4th 400, 413 (2d Cir. 2021) (applying Second Circuit law to affirm denial of non-signatory's motion to compel arbitration based on equitable estoppel where the counterparty to the arbitration agreement was not a party to the litigation, and Plaintiffs viewed Defendants and that counterparty as independent from each other).

Here, as stated in the Zelle Agreement, Chase and Zelle "have partnered . . . to enable transfers of money" from the customer's Chase account. The 2021 and 2022 versions of the agreement are called the "Zelle Service Agreement and Privacy Notice." The 2019 version similarly states in bold near the top of the first page, "Chase QuickPay with Zelle Service Agreement and Privacy Notice." The entire agreement concerns customers' transfers of money from their Chase accounts using Zelle. In this action, Plaintiffs are suing Chase and Zelle over such transfers. The Complaint alleges that Chase along with six other banks own Zelle. Here the relationship among Plaintiffs, Chase and Zelle, the Zelle Agreement, and the issues in the lawsuit are sufficiently intertwined that Plaintiffs are estopped from refusing to arbitrate their claims against Zelle at the same time that they arbitrate their claims against Chase. *See, e.g.*, *Brkic v. Dumbo Moving & Storage, Inc.*, No. 22 Civ. 7029, 2023 WL 128801, at *6 (S.D.N.Y.

Jan. 9, 2023); *Padula v. eBay*, No. 21 Civ. 5391, 2022 WL 18456614, at *6-*8 (E.D.N.Y. Dec. 29, 2022), *report and recommendation adopted,* No. 21 Civ. 5391, 2023 WL 375554 (E.D.N.Y. Jan. 24, 2023).

*     *     *

For the reasons above, Defendants' motion to compel arbitration is **GRANTED**.  All proceedings in this case are **STAYED** pending arbitration of Plaintiffs' claims.  Plaintiffs shall file a letter by **March 26, 2024**, and every two months thereafter reporting the status of the arbitration.  Within seven days of the resolution of any arbitration proceedings, the parties shall file a status letter proposing next steps, if any, in this litigation.

The Clerk of Court is respectfully directed to close the motions at Dkt. Nos. 45 and 58.

Dated: January 25, 2024
     New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

16